# United States Court of Appeals
## For the First Circuit

No. 13-1858

UNITED STATES OF AMERICA,

Appellee,

v.

ALBERTO OMAR DEL VALLE-RODRÍGUEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Howard, Selya and Lipez,
Circuit Judges.

Arza Feldman and Feldman and Feldman on brief for appellant.
Rosa Emilia Rodríquez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and John A. Mathews II, Assistant United States Attorney, on brief for appellee.

August 4, 2014

**SELYA, Circuit Judge.**  In Tapia v. United States, 131 S. Ct. 2382 (2011), the Supreme Court made pellucid that "a court may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation." Id. at 2393.  Nevertheless, a sentencing "court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs." Id. at 2392.  This case requires us, for the first time, to plot the fine line that separates impermissible uses of rehabilitation from permissible uses. Concluding that the sentence imposed was free from error in this or any other respect, we affirm.

## I.  BACKGROUND

Because this sentencing appeal trails after a guilty plea, we glean the facts from the plea agreement, the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSI Report), and the transcript of the disposition hearing.  See United States v. Nguyen, 618 F.3d 72, 73 (1st Cir. 2010); United States v. Dietz, 950 F.2d 50, 51 (1st Cir. 1991).

Our account starts with the events of June 5, 2012.  On that date, defendant-appellant Alberto Omar Del Valle-Rodríguez commandeered an automobile at gunpoint.  Police officers

subsequently located the stolen car and apprehended the appellant in Carolina, Puerto Rico.

A federal grand jury sitting in the District of Puerto Rico returned an indictment charging the appellant with taking a motor vehicle by force, violence, and intimidation with the intent to cause death or serious bodily harm (count 1).[1] See 18 U.S.C. § 2119(1). After initially maintaining his innocence, the appellant agreed to plead guilty to this count. A magistrate judge recommended acceptance of the changed plea and ordered the preparation of a PSI Report.

At the disposition hearing, the district court (having accepted the guilty plea) constructed the appellant's guideline sentencing range (GSR). To a base offense level of 20, see USSG §2B3.1(a), the court essayed various adjustments, up and down, netting out a total of three additional levels. See id. §§2B3.1(b)(2)(D), 2B3.1(b)(5), 3E1.1(b). These computations, unchallenged on appeal, yielded a total offense level of 23. The court paired this total offense level with an unchallenged criminal history category of V (which resulted from the appellant's significant record of prior convictions and the fact that he had committed the 2012 carjacking while on probation).

---

[1] Count 2 of the indictment charged the appellant with using a firearm in relation to a crime of violence. See 18 U.S.C. § 924(c). Because the district court dismissed this count as part of the appellant's plea bargain, we make no further mention of it.

The court proceeded to fix the GSR at 84 to 105 months and sentenced the appellant to an upwardly variant term of immurement (120 months). This timely appeal ensued.

## II. ANALYSIS

The appellant does not gainsay the sentencing court's guideline calculations. He does, however, attack what he perceives as the court's reliance on his rehabilitative needs and its imposition of an above-the-range sentence. We address these matters sequentially.

### A. Rehabilitation.

We preface our analysis of the appellant's first claim of error by noting that he failed to advance this claim below. Our review is, therefore, limited to plain error. See United States v. Medina-Villegas, 700 F.3d 580, 583 (1st Cir. 2012). The plain error standard is familiar. To succeed on plain error review, a defendant must demonstrate "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). Here, however, we discern no error, plain or otherwise.

The appellant argues that the district court erred by using his drug addiction and his related need for rehabilitation as factors warranting an increase in the length of his sentence. The

factual support for this argument is at best tenuous; the appellant points only to the court's allusions at sentencing to his "chronic drug addiction" and "need for supervision."

His argument's legal foundation, loosely based on the Supreme Court's decision in Tapia, is also shaky. It seeks to exploit a grey area: the Tapia Court did not draw a precise line separating the impermissible use of rehabilitation to increase the length of a sentence from the permissible discussion of rehabilitation programs. See Tapia, 131 S. Ct. at 2392-93. But even though this court has not had occasion to plot that line post-Tapia, a broad consensus has developed among the courts of appeals. While the courts have used a variety of locutions, the dividing line is whether a sentencing court's reference to rehabilitative needs was causally related to the length of the sentence or, conversely, was merely one of a mix of sentencing consequences and opportunities. In the absence of a causal relationship, courts have hesitated to find Tapia error. See United States v. Lifshitz, 714 F.3d 146, 150 (2d Cir. 2013) (per curiam) (finding no Tapia error where court mentioned rehabilitation but did not "base[] the length of [the defendant's] sentence on his need for treatment" and other "primary considerations" were present); United States v. Repolgle, 678 F.3d 940, 943 (8th Cir. 2012) (finding no Tapia error where, despite mention of rehabilitation, there was no evidence that the court lengthened the sentence based on rehabilitative

-5-

concerns).    Where,    however,    the    record    indicates    that rehabilitative    concerns    were    the    driving    force    behind,    or    a dominant    factor    in,    the    length    of    a    sentence,    courts    have    found Tapia    error.    See,    e.g.,    United States    v.    Garza,    706    F.3d    655,    662 (5th    Cir.    2013)    (finding    Tapia    error    where    "rehabilitative    needs were    the    dominant    factor"    for    the    sentence);    United States    v. Cordery,    656    F.3d    1103,    1105-06    (10th    Cir.    2011)    (finding    Tapia error    where    court    imposed    "a    longer    term    of    imprisonment    in    order to    make    [the    defendant]    eligible    for"    a    particular    rehabilitation program).

We    join    this    consensus    and    hold    that    no    Tapia    error occurs    unless    rehabilitative    concerns    are    being    relied    upon    either in    deciding    whether    to    incarcerate    or    in    deciding    the    length    of    the incarcerative    sentence    to    be    imposed.    Thus,    the    mere    mention    of rehabilitative    needs,    without    any    indication    that    those    needs influenced    the    length    of    the    sentence    imposed,    is    not    Tapia    error.[2]

Measured    against    this    benchmark,    the    appellant's    argument shrivels.    First,    the    district    court    never    mentioned

---

[2] In United States v. Vandergrift, ___ F.3d ___ (11th Cir. 2014) [No. 12-13154], the Eleventh Circuit held that any consideration of rehabilitation by a sentencing court amounts to Tapia error. See id. at ___ [No. 12-13154, slip op. at 12]. This rigid formulation is inconsistent not only with the consensus view of the other circuits but also with the Tapia Court's statement approving some discussion of rehabilitation by a sentencing court. See Tapia, 131 S. Ct. at 2392. We find this interpretation unnecessarily restrictive and choose to take a more balanced view.

rehabilitation.[3]  Second, the record contains no indication that the district court's references to the appellant's chronic drug addiction either were a proxy for rehabilitative concerns or played any causal role in determining the length of his sentence.  There is simply nothing in the sentencing record that, fairly viewed, indicates that the court hinged any part of its sentencing determination on rehabilitative concerns.

We reject the appellant's far-fetched suggestion that the district court's articulation of his perceived "need for supervision" insinuates that his sentence was designed to accommodate rehabilitative treatment.  That rank speculation depends on a distorted interpretation of the court's language.[4]  After all, "supervision" is virtually a term of art in criminal sentencing, cf. USSG §5D1.1(a) (discussing "term of supervised release"), and the appellant's unsavory criminal past graphically illustrates the need for supervision.  Nothing in what the district court said supports equating "supervision" with "rehabilitation" here.

---

[3] The closest that the court came to mentioning rehabilitation was when it told the appellant: "[U]ntil you decide to do something with [your] drug addiction you will be putting . . . people['s] li[ves] at risk."

[4] One is reminded of Humpty Dumpty, who famously said: "When I use a word . . . it means just what I choose it to mean — neither more nor less."  Lewis Carroll, Through the Looking-Glass and What Alice Found There, ch. 6 (1871).

To cinch the matter, the actual basis for the district court's sentencing determination is crystal clear. The court made persistent and pointed references to the appellant's extensive criminal history, serial probation violations, and elevated risk of recidivism. These factors — not drug addiction or rehabilitative concerns — plainly appear to have been the driving forces behind, and the dominant factors in, the length of the appellant's sentence. There is no hint of <u>Tapia</u> error.

## B. <u>Upward Variance</u>.

The appellant's second claim of error implicates the reasonableness of the upward variance. We review this claim for abuse of discretion. <u>See</u> <u>Gall</u> v. <u>United States</u>, 552 U.S. 38, 46 (2007). The hallmark of this inquiry is reasonableness. <u>See</u> <u>United States</u> v. <u>Clogston</u>, 662 F.3d 588, 590 (1st Cir. 2011).

With respect to sentencing determinations, reasonableness has both a procedural and a substantive dimension. <u>See</u> <u>United States</u> v. <u>Martin</u>, 520 F.3d 87, 92 (1st Cir. 2008). The procedural dimension includes errors such as failing to consider appropriate sentencing factors, predicating a sentence on clearly erroneous facts, or neglecting to explain the rationale for a variant sentence adequately. <u>See</u> <u>id.</u> (citing <u>Gall</u>, 552 U.S. at 51). The substantive dimension focuses on the duration of the sentence in light of the totality of the circumstances. <u>See</u> <u>id.</u>

-8-

The appellant casts his claim of error as procedural, arguing that the considerations on which the district court based its upward variance were already taken into account in fashioning the GSR. Relatedly, he argues that the court failed to articulate any reasons why his crime differed from the heartland of the crimes encompassed within the GSR.

We approach these arguments mindful that deference to the trial court is a lineament of appellate review of federal criminal sentences. See United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013). The advisory sentencing guidelines are only "the starting point and initial benchmark" for shaping a sentence, Gall, 552 U.S. at 49, and sentencing courts may custom-tailor sentences to fit the distinctive circumstances of particular cases. In performing this task, a sentencing court ought to adopt a flexible, case-by-case approach. See Martin, 520 F.3d at 91. Such an approach may in a given case produce a sentence that falls outside the GSR.

Where, as here, a court imposes a sentence above the GSR, it must justify the upward variance. See Flores-Machicote, 706 F.3d at 21. We have held that an upward variance may be justified by, say, a finding that the defendant's criminal history score underrepresents the gravity of his past conduct, see id. at 21-22, or by a finding that the GSR underestimates the likelihood of

recidivism, see United States v. Politano, 522 F.3d 69, 74-75 (1st Cir. 2008).

Here, the appellant was found to have a significant criminal record, some of which (for technical reasons) did not figure into his criminal history score. In addition, he misled probation officials as to his whereabouts and failed on several occasions to comply with probation conditions. The district court concluded that this sordid history of disrespect for the law demonstrated both an inordinately high risk of recidivism and the unsuitability of a within-the-range sentence. This conclusion, in turn, sparked the upward variance.

The appellant disputes the sentencing court's assessment, relying heavily on our decision in United States v. Zapete-Garcia, 447 F.3d 57 (1st Cir. 2006). There, we held that a sentencing court must indicate why the defendant's situation differs from the mine-run of cases when basing an upward variance on a factor already generally accounted for by the GSR. See id. at 60.

Zapete-Garcia cannot bear the weight of the appellant's jeremiad. In that case, the court, faced with a GSR that topped off at six months, imposed a 48-month sentence. See id. at 58-59. This sentence represented an upward variance of 800%. See id. By contrast, the variance here — 15 months over the high end of a GSR that topped off at 105 months — was much more modest. This is a critical distinction because the greater a deviation from the GSR,

the more compelling the sentencing court's justification must be. See United States v. Smith, 445 F.3d 1, 4 (1st Cir. 2006).

In all events, a sentencing court's obligation to explain a variance requires the court to offer a plausible and coherent rationale — but it does not require the court to be precise to the point of pedantry. Viewed through this prism, the court below provided a sufficient explanation for the variant sentence that it imposed. The court clearly articulated why it believed that the appellant's case differed from the norm. In particular, the court expounded upon the especially high risk of future criminal activity, the concomitant need to protect the public, and the appellant's unusual penchant for failing to comply with safeguards imposed by the judicial system.

We discern no abuse of discretion. The upward variance is anchored in a plausible, albeit not inevitable, view of the circumstances sufficient to distinguish this case from the mine-run of cases covered by the GSR. Moreover, this view was adequately articulated by the sentencing court. The fact that we, from a lofty appellate perch, might think some lesser sentence appropriate is not, in itself, a sufficient reason to disturb the district court's exercise of its discretion. See Gall, 552 U.S. at 51. In the last analysis, there is no perfect sentence but, rather, a wide universe of supportable sentencing outcomes. See Martin, 520 F.3d at 92.

**III. CONCLUSION**

We need go no further.  For the reasons elucidated above, the appellant's sentence is


**<u>Affirmed</u>.**