# United States Court of Appeals
## For the First Circuit

No. 14-1665

UNITED STATES OF AMERICA,

Appellee,

v.

JOSÉ M. PANTOJAS-CRUZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Torruella, Lynch, and Thompson,
Circuit Judges.

John H. Cunha, Jr., T. Michael McDonald and Cunha & Holcomb, P.C., on brief for appellant.
Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Rosa Emilia Rodríguez-Vélez, United States Attorney, on brief for appellee.

August 28, 2015

**TORRUELLA, Circuit Judge**. Defendant-appellant José M. Pantojas-Cruz ("Pantojas") pleaded guilty to being a prohibited person in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). He challenges the procedural and substantive reasonableness of his upwardly variant sentence. After careful consideration, we affirm.

## I. Background

Because this appeal follows a guilty plea, we draw the facts from the change-of-plea colloquy, the plea agreement, the Presentence Investigation Report ("PSR"), and the transcript of the sentencing hearing. See United States v. King, 741 F.3d 305, 306 (1st Cir. 2014).

On August 18, 2013, Puerto Rico Police Department ("PRPD") officers responded to a murder scene at the Bellavista sector in Bayamón, Puerto Rico. While at the scene, officers received information that a gray vehicle fled the area at a high rate of speed after gunshots were heard. Shortly after, a PRPD officer observed a gray vehicle driving slowly in the vicinity of the scene, and after noting that neither the driver nor the passenger was wearing a seatbelt -- in violation of a Puerto Rico Vehicle and Traffic Law -- the officer proceeded to initiate a traffic stop. During the stop, the officer noticed the passenger, later identified to be Pantojas, attempting to conceal what appeared to be a firearm in his groin area. After ordering both

-2-

individuals out of the vehicle, a pat-down search of Pantojas revealed: a model 23 Glock pistol modified to fire in full automatic capacity loaded with eight rounds of .40 caliber ammunition hidden in his groin area; and a .40 caliber Kahr pistol concealed in his waistband. A subsequent search of the vehicle revealed three Glock magazines loaded with forty-five rounds of .40 caliber ammunition. Later on that same date, Pantojas admitted to Homeland Security Investigations agents that he had smoked marijuana on a daily basis for many years and that both weapons belonged to him.

On August 21, 2013, Pantojas was charged in a two-count indictment. Count One, the count of conviction, charged Pantojas with being a prohibited person in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). Count Two charged him with the illegal possession of a machinegun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2).

Pantojas pleaded guilty to Count One on October 23, 2013, pursuant to a plea agreement. In the plea agreement, the parties calculated a total offense level of seventeen, which resulted from a base offense level of twenty pursuant to U.S.S.G. § 2K2.1(a)(4)(B) and a three-point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), (b). The parties agreed that Pantojas could request a sentence at the lower end of the applicable Guidelines Sentencing Range ("GSR"), while the

government would request a sentence within the GSR. The PSR, which was disclosed to the parties on January 16, 2014, calculated the same total offense level and, based on Pantojas's Criminal History Category I, yielded a GSR of twenty-four to thirty months of imprisonment, a fine range of $5,000 to $50,000, and a supervised release term between one and three years. The PSR also stated that the maximum term of imprisonment for the offense that Pantojas pleaded guilty to was ten years.

The sentencing hearing took place on May 28, 2014. At the hearing, Pantojas stated that he had no objections to the PSR, and noted that he had filed a sentencing memorandum detailing certain sentencing factors he wanted the court to consider, including his upbringing, "which was not one of the most favorable," the lack of a positive father figure in his life, and his susceptibility to peer pressure. Pantojas argued for a within-the-Guidelines sentence, while the government recommended that Pantojas be sentenced at the high end of the GSR, to thirty months of imprisonment.

After hearing the parties' arguments and Pantojas's allocution, the district court began its consideration of the sentence. It calculated the same total offense level and GSR as the PSR and the parties. The district court then stated that it had considered the factors set forth in 18 U.S.C. § 3553(a). It noted that although Pantojas had no prior convictions, he was

arrested previously for possession of marijuana, had smoked marijuana since he was twenty years old,[1] and a recent voluntary sample provided by Pantojas yielded positive results to marijuana and Percocet. The district court also noted that Pantojas was investigated for murder using one of the firearms for which he was charged in this case and that a Commonwealth of Puerto Rico court had found probable cause against him for the murder, for the illegal possession of the weapon, and for pointing and firing the weapon. The court further stated:

> This is one of those cases of a young man with a pistol. The case is different from others because in this case Mr. Pantojas has been accused of murder using that pistol. It's but an example of how Puerto Rico has a homicide rate four times the national rate and two times that of virtually every other state.
>
> Violent crimes and murders are occurring at all hours of the day, at any place on the island, on congested public highways. We have drive-by shootings just about every day, in shopping centers, on public basketball courts and even at cultural events like the Fiesta de San Sebastián. Firearms like the one Mr. Pantojas possessed are present everywhere, obtained by youngsters, like Mr. Pantojas, who have absolutely no training in the proper use of them and who appear not to have the means to purchase them.
>
> Thanks to the firearms initiative which the Department of Justice of Puerto Rico and the U.S. Attorney's Office have implemented, the number of murders has gone down since 2011. . . .

---

[1]  Pantojas was twenty-four years old at the time of sentencing.

I have to consider Puerto Rico's high firearms
and violent crime rate to impose a sentence in
this case, just like I have to consider the
fact that probable cause was found against Mr.
Pantojas for murder and weapons violations.

. . .

This is not a case of a gun crime being
aberrational, as perhaps it would be in a
community relatively free of that type of
crime. Gun crimes are, unfortunately,
pervasive throughout the island. This is one
of them.

The district court ultimately sentenced Pantojas to sixty

months of imprisonment -- two times the top of his GSR -- to be

served consecutively with any sentence imposed on Pantojas by the

court of the Commonwealth of Puerto Rico in his murder case if

found guilty, followed by a term of supervised release of three

years.[2] This appeal followed.[3]

## II. Discussion

Pantojas challenges both the procedural and substantive

reasonableness of his sentence. Procedurally, he argues that the

district court improperly considered, and relied too heavily on,

Puerto Rico's violent crime rate. Pantojas also asserts that,

---

[2] At the end of the sentencing hearing the district court granted
the Government's motion to dismiss Count Two.

[3] We note that even though Pantojas's plea agreement contained a
waiver-of-appeal clause, his appeal is properly before us because
he was not sentenced in accordance with the terms, conditions, and
recommendations set forth in the plea agreement. See United States
v. Murphy-Cordero, 715 F.3d 398, 400 (1st Cir. 2013) (holding that
a waiver-of-appeal clause only precludes appeals falling within its
scope).

pursuant to Rule 32(h) of the Federal Rules of Criminal Procedure, the district court was required to give him notice of the grounds on which it was contemplating a "departure" from the applicable GSR, and that it failed to do so by not including Puerto Rico's violent crime rate either in the PSR or in the proceedings prior to the sentencing hearing. Furthermore, Pantojas argues that the district court's justification for the sentence it imposed was not proportionate to the degree of variance above the GSR.

Substantively, Pantojas alleges that his sentence was "greater than necessary" and that the district court abused its discretion by not sentencing him to "the agreed-upon plea range." He also claims that the district court gave too much weight to the circumstances of the offense and not enough weight to his personal history and characteristics. Finally, Pantojas claims that because the district court took into consideration the circumstances of the offense in imposing a sentence consecutive to any sentence that may be imposed by the state court for murder, the district court abused its discretion in further punishing him with an above-the-Guidelines sentence.

Reviewing the record as a whole, each of Pantojas's claims fails, as his sentence is both procedurally sound and substantively reasonable.

We review sentencing decisions imposed under the advisory Guidelines, whether outside or inside the applicable GSR, for

reasonableness. United States v. Turbides-Leonardo, 468 F.3d 34, 40 (1st Cir. 2006). Generally, we apply the deferential abuse of discretion standard in evaluating the reasonableness of a sentence. Gall v. United States, 552 U.S. 38, 51 (2007); see also United States v. Del Valle-Rodríguez, 761 F.3d 171, 176 (1st Cir. 2014). If a defendant, however, "fails to preserve an objection below, the plain error standard supplants the customary standard of review." United States v. Dávila-González, 595 F.3d 42, 47 (1st Cir. 2010). "Review for plain error entails four showings: (1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity or public reputation of judicial proceedings." United States v. Medina-Villegas, 700 F.3d 580, 583 (1st Cir. 2012) (quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)). We will not reverse a district court's sentence under this standard unless there is "a reasonable probability that, but for the error, the district court would have imposed a different, more favorable sentence." Id. (citing United States v. Manqual-García, 505 F.3d 1, 15 (1st Cir. 2007)).

Our review of sentences imposed under the advisory Guidelines is a two-step process: "[w]e first examine whether the district court committed any procedural missteps and, if the sentence is procedurally sound, we then ask whether the sentence is substantively reasonable." United States v. Rossignol, 780 F.3d

-8-

475, 477 (1st Cir. 2015). Examples of procedural errors include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the section 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range." United States v. Trinidad-Acosta, 773 F.3d 298, 309 (1st Cir. 2014) (quoting United States v. Rivera-Moreno, 613 F.3d 1, 8 (1st Cir. 2010)).

If we determine that the sentence imposed is procedurally sound, we evaluate its "substantive dimension[, which] focuses on the duration of the sentence in light of the totality of the circumstances." Del Valle-Rodríquez, 761 F.3d at 176 (citing United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008)). "There is no one reasonable sentence in any given case but, rather, a universe of reasonable sentencing outcomes." United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011) (citing Martin, 520 F.3d at 92). Moreover, "[a] sentencing court is under a mandate to consider a myriad of relevant factors, but the weighting of those factors is largely within the court's informed discretion." Id. at 593; see also United States v. Flores-Machicote, 706 F.3d 16, 23 (1st Cir. 2013) ("There is no pat formula dictating how these factors interrelate. A sentencing court has broad discretion to assay them and need not afford equal weight to each factor in a

given case."). Ultimately, "the linchpin of a reasonable sentence is a plausible sentencing rationale and a defensible result." United States v. Narváez-Soto, 773 F.3d 282, 288 (1st Cir. 2014) (quoting Martin, 520 F.3d at 96).

## A. Puerto Rico's Violent Crime Rate

Pantojas challenges the district court's consideration of Puerto Rico's violent crime rate as a factor in sentencing. Specifically, he argues that the district court focused too much on statistics of Puerto Rico's violent crime rate, and too little on his personal circumstances. Pantojas ultimately alleges that the district court's reliance on such community-based considerations amounted to an abuse of discretion.

Because Pantojas failed to preserve this argument below, we review it for plain error. United States v. Fernández-Hernández, 652 F.3d 56, 71 (1st Cir. 2011). However, we find no error, plain or otherwise.

Contrary to Pantojas's contentions, in making sentencing determinations, district courts may consider community-based and geographic factors, including "the incidence and trend lines of particular types of crime in the affected community." Flores-Machicote, 706 F.3d at 22-23; see also Narváez-Soto, 773 F.3d at 286 ("In weighing the impact associated with a particular crime, a sentencing court may consider the pervasiveness of that type of crime in the relevant community."). Indeed, this court has noted

-10-

the important role of deterrence in the sentencing calculus, and explained that "[c]ommunity-based considerations are inextricably intertwined with deterrence, which aims to 'prevent[] criminal behavior by the population at large and, therefore, incorporates some consideration of persons beyond the defendant.'" Flores-Machicote, 706 F.3d at 23 (citing United States v. Politano, 522 F.3d 69, 74 (1st Cir. 2008)).

Although we have stated that "[i]t is possible for a sentencing judge to focus too much on the community and too little on the individual and, thus, impose a sentence that cannot withstand the test of procedural reasonableness," id. at 24, that did not happen here. Though the district court considered community-based factors at some length, it is clear from the record that its primary consideration in imposing a sentence above the applicable GSR was the fact that a Commonwealth of Puerto Rico court had found probable cause against Pantojas for a murder committed with the weapon he was charged with possessing. This is evident from the following district court statement:

> [C]onsidering that probable cause was determined that Mr. Pantojas committed a murder using the weapon for which he is charged in this case, [the court] will impose a sentence above the guideline range. That sentence above the guideline range is the sentence that would reflect the seriousness of the offense, would promote respect for the law, would protect the public from further crimes by Mr. Pantojas and would address the issue of deterrence and punishment.

-11-

The record shows that the district court also gave serious consideration to Pantojas's history and characteristics, emphasizing his drug use and prior arrest for drug possession. Thus, it is clear that the district court's sentencing rationale was neither dominated nor improperly influenced by community-based considerations. See Narváez-Soto, 773 F.3d at 287 ("The analytic centerpiece of the court's sentencing rationale was the crime of conviction, and there is no satisfactory footing for a conclusion that community-based considerations either dominated or improperly influenced the fashioning of the sentence.").

Pantojas's argument that the district court erred by relying on crime statistics because crime has been decreasing nationwide, as well as in Puerto Rico, fares no better. See id. at 286 ("Even if certain types of violent crime are more prevalent in other places than the court realized, that does not detract from the court's reasoned determination, predicated on its experience, that the incidence of violent crime -- and, particularly, gun-related violent crime -- is an acute problem in Puerto Rico.").

Accordingly, the district court committed no procedural error -- let alone a plain one -- in considering community-based factors and the prevalence of gun violence in sentencing Pantojas.

**B. Lack of Notice**

Pantojas's next procedural challenge -- that the district court erred by failing to give him advance notice of its reliance on

Puerto Rico's violent crime rate as a basis for a "departure" from the applicable GSR -- fails as well.  Rule 32(h) of the Federal Rules of Criminal Procedure states as follows:

> Before the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure.

However, Rule 32(h) "does not apply to 18 U.S.C. § 3553 variances by its terms."  Irizarry v. United States, 553 U.S. 708, 714 (2008); see also United States v. Adorno-Molina, 774 F.3d 116, 126 (1st Cir. 2014) ("[T]he rule applies only to authorized 'departures' under the Sentencing Guidelines and not to 'variances,' non-Guidelines sentences that result from the sentencing judge's considerations of factors under 18 U.S.C. § 3553.").  Here, the district court's above-the-Guidelines sentence was based explicitly on the § 3553(a) sentencing factors, and was therefore a variance rather than a departure.  Regarding the need for notice before imposing a variant sentence, we have held that "a judge must provide advance notice or grant a continuance only in those cases where the district court 'proposed to adopt a variance sentence relying on some ground or fact that would unfairly surprise competent and reasonably prepared counsel.'"  Politano, 522 F.3d at 75 (quoting United States v.

<u>Vega-Santiago</u>, 519 F.3d 1 (1st Cir. 2008) (en banc) (alteration and emphasis in the original)).

As described above, the district court in this case relied primarily on three grounds for varying from the GSR: the seriousness of the crime, the history and characteristics of the defendant, and the need for deterrence.[4] These grounds "fall within the 'garden variety considerations'" which "should not generally come as a surprise to trial lawyers who have prepared for sentencing." <u>Id.</u> Thus, the district court did not have to give Pantojas any notice of its consideration of Puerto Rico's violent crime rate and did not commit any procedural error by failing to do so.

## C. Sufficiency of the Explanation for the Chosen Sentence

Pantojas also challenges the district court's justification for imposing an above-the-Guidelines sentence, claiming that its explanation of the sentence is insufficient and not proportionate to the magnitude of the variance from the GSR. Under 18 U.S.C. § 3553(c), a sentencing court must state in open court the reasons for the particular sentence it chooses to impose. <u>See</u> <u>Medina-Villegas</u>, 700 F.3d at 583. A sentence above the applicable GSR requires a greater justification than one within the GSR. <u>See</u> <u>Del Valle-Rodríguez</u>, 761 F.3d at 177; <u>United States</u> v.

---

[4] The district court mentioned the statistics to support its discussion of community-based factors and the need for deterrence.

Fernández-Cabrera, 625 F.3d 48, 53-54 (1st Cir. 2010) ("The level of detail required varies depending on the circumstances. Thus, 'sentences that fall inside a properly calculated guideline sentencing range require a lesser degree of explanation than those that fall outside.'" (citing Turbides-Leonardo, 468 F.3d at 41)). Despite the greater justification required, "a sentence outside the Guidelines carries no presumption of unreasonableness." Irizarry, 553 U.S. at 713 (citing Gall, 552 U.S. at 51). Furthermore, 18 U.S.C. § 3553(c)'s mandate "does not mean that the sentencing court's explanation need be precise to the point of pedantry." Turbides-Leonardo, 468 F.3d at 40.

Here, the district court provided a sufficient explanation and justification for its deviation above the GSR. At the sentencing hearing, the district court explained that "considering that probable cause was determined that Mr. Pantojas committed a murder using the weapon for which he is charged in this case, [the court] will impose a sentence above the guideline range." The court explained that it would be an upwardly variant sentence which would "reflect the seriousness of the offense, would promote respect for the law, would protect the public from further crimes by Mr. Pantojas and would address the issue of deterrence and punishment." Where a court deviates from the applicable GSR, its reasons "should typically be rooted either in the nature and circumstances of the offense or the characteristics of the

-15-

offender." Martin, 520 F.3d at 91. Here, the district court sufficiently explained its chosen sentence, which was indeed primarily grounded on the circumstances of the offense and the defendant's history and characteristics. Accordingly, the district court's explanation of the sentence it imposed did not amount to a procedural error.

In sum, a review of the record reveals that the district court did not commit any procedural error. The district court correctly calculated the GSR, which it did not treat as mandatory. It also acknowledged that it had considered all of the sentencing factors set forth in 18 U.S.C. § 3553(a), which is entitled to significant weight, see United States v. Torres-Landrúa, 787 F.3d 58, 69 n.12 (1st Cir. 2015), and sufficiently explained its chosen sentence, which was grounded on the § 3553(a) sentencing factors. Thus, Pantojas's sentence of sixty months of imprisonment was procedurally sound.

**D. Substantive Reasonableness of the Sentence Imposed**

Because we find no procedural error in the imposition of Pantojas's sentence, we move on to consider whether the sentence was substantively reasonable. See Rossignol, 780 F.3d at 477. A review of the record and consideration of the totality of the circumstances, including the extent of the district court's variance from the Guidelines, leads us to conclude that Pantojas's is substantively reasonable.

First, we reject Pantojas's claim that the district court erred in not sentencing him to the "agreed-upon plea range." Assuming, favorably to him, that abuse of discretion review applies, see United States v. Ruiz-Huertas, --- F.3d ---, No. 14-1038, 2015 WL 4086319, at *4 (1st Cir. July 7, 2015), his challenge fails, and for a simple reason. As he correctly concedes, the district court was not bound by the terms of the plea agreement and, thus, was free to sentence him up to the statutory maximum. Pantojas was aware of this when he entered his guilty plea. See United States v. Rivera-González, 626 F.3d 639, 643 (1st Cir. 2010).

Next, we also reject Pantojas's claim that the district court gave too much weight to the circumstances of the offense and not enough weight to his personal history and characteristics. We have already concluded that the district court correctly considered all the § 3553(a) sentencing factors, including Pantojas's personal history and characteristics. That the district court decided to give more weight to some of those factors than to others does not make the sentence unreasonable. See Clogston, 662 F.3d at 593 ("That the sentencing court choose not to attach to certain of the mitigating factors the significance that the appellant thinks they deserved does not make the sentence unreasonable."); United States v. Innarelli, 524 F.3d 286, 292 (1st Cir. 2008) ("The district court's discretion in determining a defendant's sentence is very

-17-

broad: once the GSR is properly calculated . . . the court may construct a sentence varying from the GSR 'based on a complex of factors whose interplay and precise weight cannot even be precisely described.'" (quoting Martin, 520 F.3d at 92)).

Finally, we find no merit in Pantojas's claim that the district court abused its discretion in sentencing him to two times the top of his GSR based on the fact that probable cause had been found against him on the state murder charges, because the district court had already taken into consideration the pending murder charges when it determined that his sentence would be consecutive to any sentence that may be imposed by the state court for the murder. It was within the district court's discretion to sentence Pantojas to an above-the-Guidelines sentence and to also make that sentence consecutive to any sentence that could be imposed on him at the state level for the murder charges. The district court's focus on the circumstances of the offense, as well the need for deterrence and Pantojas's history and characteristics, constituted a plausible rationale for Pantojas's sentence. See United States v. Carrasco-de-Jesús, 589 F.3d 22, 29-30 (1st Cir. 2009).

Though Pantojas's sentence of sixty months is two times the higher end of the applicable GSR, we note that the crime for which Pantojas pleaded guilty to carries a maximum sentence of ten years of imprisonment, and, given the totality of the circumstances in this case, his sentence was no greater than necessary. See

United States v. Santiago-Rivera, 744 F.3d 229, 234 (1st Cir. 2014) ("The decisive consideration is that the sentence the court chose, though severe, was not outside the wide universe of reasonable sentences for the offense[] of conviction."). Accordingly, we find the district court's sentence to be substantively reasonable.

### III. Conclusion

Pantojas's sentence of sixty months of imprisonment is both procedurally sound and substantively reasonable. Thus, we affirm his sentence.

**Affirmed.**