# United States Court of Appeals
## For the First Circuit

No. 14-1260

UNITED STATES OF AMERICA,

Appellee,

v.

MIGUEL VILLANUEVA LORENZO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. José Antonio Fusté, U.S. District Judge]

Before

Kayatta, Lipez, and Barron,
Circuit Judges.

Carlos R. Noriega on brief for appellant.
Rosa Emilia Rodríguez-Velez, United States Attorney, and
Nelson Pérez-Sosa, Assistant United States Attorney, Chief,
Appellate Division, on brief for appellee.

September 23, 2015

**LIPEZ**, **Circuit Judge**.  Appellant Miguel Villanueva Lorenzo was sentenced to 240 months' imprisonment, an upward variance from the applicable recommended Guidelines range of 168 to 210 months, following his guilty plea to a charge of conspiracy to possess with intent to distribute controlled substances. Appellant challenges the variance, arguing that the district court misapplied 18 U.S.C. § 3553(a) by (1) failing to take into account his personal history and characteristics and focusing exclusively on his criminal record, and (2) erroneously inflating his sentence in an effort to counteract what it perceives as lax sentencing in the local Puerto Rico court system.  Finding no merit to appellant's contentions, we affirm.

## I.

Appellant served as a leader of a drug trafficking organization that conspired to distribute a variety of controlled substances at El Cotto public housing project in Arecibo, Puerto Rico.[1]  In his role in the conspiracy, appellant supervised the distribution of crack cocaine, cocaine, marijuana, oxycodone, and

---

[1] Since appellant pled guilty pursuant to a plea agreement, we derive the facts from the plea agreement, the change-of-plea colloquy, the unchallenged portions of the presentence investigation report, and the sentencing hearing transcript. United States v. Ocasio-Cancel, 727 F.3d 85, 88 (1st Cir. 2013).

Xanax. He received proceeds from the distribution of narcotics and he carried firearms in order to protect the drug distribution points at the housing project.

In March 2013, a grand jury indicted appellant, along with forty-four co-defendants, for: conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1), 846, and 860 (Count One); and aiding and abetting possession with intent to distribute cocaine base, cocaine, marijuana, and heroin in violation of 21 U.S.C. §§ 841(a)(1), 860 and 18 U.S.C. § 2 (Counts Two - Five).

In October 2013, appellant pled guilty to Count One of the indictment pursuant to a plea agreement. The parties stipulated that, for sentencing purposes, appellant would be treated as having a total offense level of 33, as determined under U.S.S.G. § 2D1. The parties did not stipulate as to appellant's Criminal History Category ("CHC"), but assumed he was in CHC III. The applicable Guidelines range was determined to be 168 to 210 months.

The parties agreed that appellant would request a sentence of 168 months if the CHC was I, II or III, but would request the lower end of the applicable range if the CHC was IV. The government reserved the right to recommend 198 months if appellant fell in categories I through IV, and agreed to recommend the lower end of

the applicable range if appellant fell in CHC V or VI. The court calculated appellant's CHC as III.  After a sentencing hearing, the district court imposed a sentence of 240 months, followed by eight years of supervised release.

Appellant timely appealed his sentence,[2] arguing that the district court erred in failing to appropriately review the § 3553(a) factors when it sentenced him to 30 months in excess of the upper end of the applicable Guidelines range.  Specifically, appellant argues that the district court failed to give sufficient weight to his character and personal history, and placed undue weight on his criminal history.  He contends that the court erred in failing to consider that he is a "great father" with "rehabilitation potential" and that he "self[-]surrendered when he realized that the agents were looking for him."  He additionally argues that the district court's comments during sentencing, along with public comments the court has made in the past, suggest that the court erroneously inflated his sentence in an effort to offset lenient sentences imposed in the local courts.

---

[2] Although appellant's plea agreement included a waiver of his right to appeal, this provision is inapposite because the district court's sentence deviated from the parties' recommendations. See United States v. Fernández-Cabrera, 625 F.3d 48, 51 (1st Cir. 2010).

- 4 -

## A. Legal Principles

We review federal criminal sentences imposed under the advisory Guidelines for abuse of discretion. Gall v. United States, 552 U.S. 38, 51 (2007); United States v. Madera-Ortiz, 637 F.3d 26, 30 (1st Cir. 2011).  Typically, our review of a sentence imposed under the Guidelines involves a two-step process.  "First, we evaluate the procedural soundness of the sentence; second, we assay its substantive reasonableness."  Madera-Ortiz, 637 F.3d at 30.  The "procedural dimension" of sentencing review includes the correctness of the court's application of the Guidelines, while "[t]he substantive dimension focuses on the duration of the sentence in light of the totality of the circumstances." United States v. Del Valle-Rodríguez, 761 F.3d 171, 176 (1st Cir. 2014). Procedural errors amounting to an abuse of discretion include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the 18 U.S.C. § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range." Gall, 552 U.S. at 51.

Following United States v. Booker, 543 U.S. 220 (2005), we
have delineated the sequence of steps sentencing courts should
follow under an advisory guidelines regime:

> [A] sentencing court ordinarily should begin
> by calculating the applicable guideline
> sentencing range; then determine whether or
> not any departures are in order; then mull the
> factors delineated in 18 U.S.C. § 3553(a) as
> well as any other relevant considerations;
> and, finally, determine what sentence, whether
> within, above, or below the guideline
> sentencing range, appears appropriate.

United States v. Pelletier, 469 F.3d 194, 203 (1st Cir.
2006).

Pursuant to 18 U.S.C. § 3553(a), a sentencing court must
consider the following factors when imposing a sentence:

> (1) the nature and circumstances of the
> offense and the history and characteristics of
> the defendant;
> (2) the need for the sentence imposed--
>     (A) to reflect the seriousness of the
> offense, to promote respect for the law, and
> to provide just punishment for the offense;
>     (B) to afford adequate deterrence to
> criminal conduct;
>     (C) to protect the public from further
> crimes of the defendant; and
>     (D) to provide the defendant with needed
> educational or vocational training, medical
> care, or other correctional treatment in the
> most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing
> range established . . .
> (5) any pertinent policy statement--

> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense

When a sentencing court imposes an above-the-Guidelines sentence, "it must justify the upward variance." Del Valle-Rodríguez, 761 F.3d at 176. An upward variance "may be justified by, say, a finding that the defendant's criminal history score underrepresents the gravity of his past conduct." Id.

## B. Analysis

### 1. 18 U.S.C. § 3553(a) Factors

Our review of the record reveals that the district court adequately considered the § 3553(a) factors in determining appellant's sentence, taking into account both his personal history and his specific role in the conspiracy. When it imposed its 240-month sentence, the court noted:

> When you look at the 3553(a) factors, and you look at how that section tells you that you have to consider the nature of the crime, the impact that the crime has on the community . . . how the disposition of the case is going to deter or not deter future crimes, things of the sort, all these factors, I'm not mentioning them one by one, all of them point to me the fact that when you have a picture like the one that I see in this Presentence Report, a non-guideline sentence has to be utilized to deal with this issue.

The court then added:

> I am not making a departure. I cannot tell you that I can find a particular departure ground, because I would be inventing it. I don't think it fits squarely into the peg holes of any particular guideline disposition for departure. But I do think that when you see the overall picture here, he does fit the pattern of a potential variance to adjust the numbers to the reality of what the case is about. I will sentence him to 240 months, and I will place him on supervised release for eight years.

In its explanation of appellant's sentence, the district court emphasized appellant's particularized role in the conspiracy, noting that he "could have easily, easily have been portrayed as a leader, organizer, manager [of the conspiracy] whatever you want to call it, with a lot more than two points within the calculation. He could have easily been determined to be a three or a four, but he was only given a two[-level increase for his leadership role]."

Contrary to appellant's contention, the district court did not ignore his personal circumstances. Rather, the court explicitly noted appellant's age, seventh grade education, documented history of substance abuse beginning in his teens, lack

of mental health issues,[3] and the "grim" prospects he faced born of two drug-addicted parents. The court thus made clear it was aware of appellant's personal history and characteristics. If the court "weighed those factors less heavily than [appellant] would have liked," that judgment was within its discretion. United States v. Rivera-González, 776 F.3d 45, 50 (1st Cir. 2015); see also United States v. Carrasco-De-Jesús, 589 F.3d 22, 29 (1st Cir. 2009) (stating that a criminal defendant is entitled to a weighing of relevant factors, "not to a particular result"); United States v. Vega-Salgado, 769 F.3d 100, 105 (1st Cir. 2014) (stating that the district court's statement that it had reviewed the § 3553(a) factors "is entitled to some weight" and that "parsing through [the § 3553(a) factors] mechanically is not" required).

Moreover, the court did not err when it considered appellant's criminal record. The court stated:

> He has the convictions we mentioned, prior convictions for resistance, obstruction of public authority, second degree murder, attempted murder, weapons laws, controlled

---

[3] The district court stated: "Some people in this position have mental problems, issues of that nature. He doesn't have that. And in that sense, when you don't have a history of mental health issues, you are in a sense kind of more in control of your situation, more responsible in a sense, because you don't have the detraction of the bad things that happen and the lack of control that some people with mental issues and problems have."

substances. Issues with domestic violence. Also the dismissals that appear here, many dismissals. When we went one by one, for controlled substances, aggravated riots, weapons laws, first degree murder, all those dismissed.

Obviously I have to consider this background. Not only the prior convictions, but also all these things. You have to consider them, and quantify them appropriately, carefully, because in some he was convicted. In some he was not. But remember that even uncharged conduct, even dismissed conduct can be considered, as long as you are careful in doing that.

Appellant was placed in CHC III based on convictions for resisting authority, second degree murder, attempted murder, five weapons law violations, and two domestic violence violations.[4] The court emphasized that defendant's CHC underrepresented the seriousness of his prior offenses:

He had an issue with resisting authority, police officers, obstruction, et cetera, but he's found guilty, fined 50 bucks for that . . . . Then he has a second degree murder conviction . . . . Was originally a first degree, and in plea negotiations, it was reduced to second degree. And he was sentenced to 12 years concurrent with whatever

_____

[4] He was fined $50 in 1995 for his conviction for resisting authority; he was sentenced to concurrent terms of twelve years imprisonment in 1996 for second degree murder, five years for attempted murder, ten years for three weapons law violations, five years for two weapons law violations; and, in 2008, he was fined $100 for one domestic violence conviction. The second domestic violence violation was dismissed.

- 10 -

else he had, which included an attempted murder, for which he gets also five years concurrent. And firearms violations for which he gets ten years, but also concurrent.

So basically, there are two violations, two Article Eight of the Puerto Rico firearms laws. Actually, not two. Three, four, five -- five firearms violations. He gets ten in each, and ten -- and some five. The Judge in Arecibo packs them all together with the murder reduced to second degree, and he is given five in some, ten in some, the murder 12. Everything's absorbed by 12 for the murder.

Sounds like a pretty good deal. If I ever find myself in the situation of having to respond to something like this, I will call the lawyer he had to see whether I can get the same deal . . . .

So he got all these things piled up into the murder. Then we have a domestic violence -- one, two. He's charged. Cases were dismissed. One was dismissed. One he got a 100 dollar fine.

He resisted authorities by the way, also. The same thing he did back in the first one that we discussed. Slapped the face of Mrs. J.D. Gonzalez, causing her to fall on the floor, and then kicked her. This occurred in the presence of a minor. Also, defendant threatened Ms. Gonzales by saying . . . I am going to kill you whore or bitch . . . . I'm just saying when you see a 100 dollar fine for all this, it just seems to me like kind of out of bounds . . . . Then we go to the other criminal conduct . . . [v]iolation of controlled substances, distribution, and distribution. Two cases in Arecibo, dismissed under Rule 64, Speedy Trial Act, without prejudice, never refiled . . . . Then he has another firearms violation, two, which included brandishing and aiming a

> weapon . . . dismissed under the Speedy Trial
> Act.
>     Then you have a first degree murder case
> with a violation of the firearms laws, several
> violations to the firearms laws.  This one
> also dismissed, Speedy Trial Act.

Sentencing courts are permitted to increase a sentence based on the nature of a defendant's criminal history where the court finds that the defendant's criminal history is underrepresented in the defendant's criminal history score.  Del Valle-Rodríguez, 761 F.3d at 176.  Thus, "a sentencing court may similarly consider whether, in a series of past convictions, the punishment appears to fit the crime.  If the court concludes that an asymmetry exists which results in a substantial underestimation of the defendant's criminal history, it may vary the sentence upward to reflect past leniency."  United States v. Flores-Machicote, 706 F.3d 16, 21 (1st Cir. 2013).

Hence, the court properly considered the relevant sentencing factors and adequately explained the rationale behind the variance.  Accordingly, the court did not abuse its discretion in imposing a sentence outside the Guidelines.

## 2. Statements Made During Sentencing[5]

Appellant contends that a number of the district court's statements during sentencing suggest that it erroneously inflated appellant's sentence to "counteract or adjust what [the court] thought was a laxity" in the Puerto Rico judicial system. For example, the court said the following:

> [W]here you see Presentence Report after Presentence Report with histories of what appear to be on paper horrific crimes, horrific crimes that in a very consequent manner, across the board, get this kind of treatment. Something that, for example, we know doesn't happen in a court of justice such as the District of Puerto Rico Federal Court.
>    It seems to me, it seems to me – I am not accusing anybody of anything. It seems to me that perhaps the pressure of the load of work, the laxity, known laxity in plea negotiations, all these things that are happening in state court, give rise to this. One possibility. I am not saying that that is the only possibility. But you cannot deny that when you look at a record like this, and you compare it with what you have seen and I have seen in a multitude of Presentence Reports coming out of matters that happen in Puerto Rico state court, sometimes they portray a picture that

_____

[5] The government has failed to respond to this argument in its brief. Indeed, it only acknowledges that appellant makes the argument: "Villanueva avers that the court . . . can't impose a higher sentence to counter act [sic] or adjust what the judge believe[s] is a laxity of the local judicial system." The government risks losing a case it should not lose, given the record below, with that kind of advocacy.

is difficult to swallow, to say the least. But that's it. That's the record.

We understand appellant's concern. It would indeed be inappropriate for a district court to impose a variant sentence on a defendant because the district court regarded the manner in which the local courts generally sentenced other persons to be too lenient. It is also true that a sentencing court may abuse its discretion by focusing "too much on the community and too little on the individual." Flores-Machicote, 706 F.3d at 24. However, the fact that the court noted its perception that the local criminal justice system is too lenient does not in and of itself render its sentence procedurally unreasonable. The question is whether the court properly focused on the defendant's particular circumstances. Id. at 23-24 (holding that a district court did not abuse its discretion by stating that "'local courts are incapable of managing [gun-related cases]'" and "'[t]he word has to spread that this Court is going to be extremely harsh with defendants who conduct and carry out gun-related crimes'" because it gave "individualized attention to the defendant's case"). As evident from the language quoted in section B.1, supra, where the court detailed the appellant's convictions in the Commonwealth court and the sentences he received, the court was simply saying

- 14 -

that it viewed appellant's own criminal history as more serious than the actual sentences received might imply given the crimes committed. Although the court viewed the history of sentences that appellant received in that system as emblematic of an overall laxity in the system, the upward variance it imposed on appellant was in response to appellant's particular sentencing history and not the court's perception of the local system's laxity generally. The court imposed the sentence it felt appellant's criminal conduct merited. Accordingly, it did not abuse its discretion.

Affirmed.