# United States Court of Appeals
## For the First Circuit

No. 14-1576

UNITED STATES OF AMERICA,

Appellee,

v.

JAVIER GUZMAN-FERNANDEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Thompson, Lipez, and Barron,
Circuit Judges.

Mary Davis and Tisdale & Davis, P.A. on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson
Pérez-Sosa, Assistant United States Attorney, Chief, Appellate
Division, and Thomas F. Klumper, Assistant United States Attorney,
on brief for appellee.

June 1, 2016

**LIPEZ**, **Circuit Judge**. Javier E. Guzman-Fernandez ("Guzman") pled guilty to one count of conspiring to commit Hobbs Act robberies in violation of 18 U.S.C. § 1951(a). After calculating Guzman's guideline sentencing range ("GSR") to be 97 to 121 months, the district court imposed a 135-month term of imprisonment. Guzman appeals his sentence, arguing that the upward variance was both procedurally and substantively unreasonable. Finding no errors, we affirm.

## I.

In June 2010, Guzman, who was a supervisor at Kmart, provided his co-conspirators with security information about one of the Kmart stores, including the layout of the store and the identity of the security guard. Relying on this information, Guzman's co-conspirators robbed the store. The robbery involved the use of a firearm, physical restraint of the store security guard, and injury to the guard.

In December 2010, Guzman provided security details about another Kmart store to his co-conspirators and prepared a hiding spot in the store for his co-defendant, who then hid in that spot until the store closed. When Guzman and other employees encountered the robber at the store the next morning,[1] Guzman pretended to be both a victim and a negotiator between the

---

[1] It is not clear from the record why the robbery was still in progress the following morning.

employees and the robber.  The second robbery involved a firearm, restraint of the store employees, and injury to the store watchman. The value of all the property taken during the two robberies exceeded $50,000.

Guzman pled guilty to conspiracy to commit Hobbs Act robberies.  See 18 U.S.C. § 1951(a).  His plea agreement and presentence investigation report recommended a GSR of 97 to 121 months, based on a total offense level of 30 and a criminal history category of I.  The offense level calculation included multiple enhancements:  (1) a five-level increase applied because a firearm was brandished, see U.S.S.G. § 2B3.1(b)(2)(C); (2) a two-level increase applied because victims sustained bodily injury, see id. § 2B3.1(b)(3)(A); (3) a two-level increase applied because victims were physically restrained, see id. § 2B3.1(b)(4)(B); (4) a two-level increase applied because the loss exceeded $50,000, see id. § 2B3.1(b)(7)(C)[2]; and (5) a two-level increase applied because Guzman "abused [his] position of public or private trust, . . . in a manner that significantly facilitated the commission or concealment of the offense," id. § 3B1.3.  At the sentencing hearing, Guzman's counsel argued for a 97-month term of imprisonment because "all the worst aspects of this case have been

_____

[2] This section was amended, effective November 1, 2015.  Here, we are relying on the guidelines that were in effect at the time that the presentence investigation report was prepared and Guzman was sentenced.

included in the [GSR] calculation."  The government argued for a 120-month sentence.

The district court rejected both proposed sentences and imposed a 135-month term of imprisonment, a 14-month variance from the top end of the GSR.  In explaining its decision, the court considered the sentencing factors as set forth in 18 U.S.C. § 3553(a).  The court's observations included the following:

- Guzman's age and personal background suggested that he had "additional controls and additional insight as to what are the responsibilit[ies] of a mature individual";

- he was involved in two robberies;

- Guzman's insider role in the two robberies -- including providing information "used to intimidate and threaten employees" and playing both the "victim's role" and "the role of a negotiator" -- demonstrated the "boldness" of the conduct and its "planned" and "deliberate" nature; and

- the two robberies were serious crimes, involving restraint of the victims and injury to the store employees, and hence were different from the typical Hobbs Act robberies found in the "Federal case law."

The district court determined that the unique facts of the robberies and Guzman's personal circumstances "require[d]" the variance in order "to promote respect for the law, . . . to deter criminal conduct, and protect the public and hard working people who [were] making basically minimum wage."  See id. § 3553(a)(2). The court concluded, in short, that a 14-month variance was

warranted to "provide just punishment with what happened." Guzman's counsel "object[ed] to the variance and the Court's application to the 3553 factors" because "all the worst aspects of th[e] case ha[d] been included in the [GSR] calculation."

**II.**

The reasonableness of a district court's sentencing determinations has procedural and substantive dimensions. United States v. Politano, 522 F.3d 69, 72 (1st Cir. 2008). The procedural inquiry asks whether the district court committed errors "such as failing to calculate (or improperly calculating) the [GSR], treating the Guidelines as mandatory, failing to consider the 18 U.S.C. § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range." United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013) (alterations in original) (quoting Gall v. United States, 552 U.S. 38, 51 (2007)). The substantive inquiry "focuses on the duration of the sentence in light of the totality of the circumstances." United States v. Del Valle-Rodríguez, 761 F.3d 171, 176 (1st Cir. 2014).

Guzman contends that his sentence was procedurally and substantively unreasonable.[3] We review both claims for abuse of

_____

[3] We may consider Guzman's appeal because the district court did not sentence Guzman according to the parties' sentencing

discretion.  Id. (citing Gall, 552 U.S. at 46).  Indeed, while the government argues that a plain error standard should apply to Guzman's procedural unreasonableness claim, we find that Guzman's objection in the proceedings below -- that "all the worst aspects of this case" have been accounted for in the Guidelines calculation -- sufficed to place the district court on notice of the procedural claim at issue.  Cf. United States v. Ríos-Hernández, 645 F.3d 456, 462 (1st Cir. 2011).  Hence, we review both reasonableness claims under the abuse-of-discretion standard.  See Politano, 522 F.3d at 72.

## A.  Procedural Error

Guzman argues that the district court failed to explain the reasons for the upward variance from the GSR, independent of the factors that were already accounted for in the offense level calculation.

Our review indicates, however, that the district court articulated at least one additional reason, beyond those accounted for in the total offense level, in considering the § 3553(a) factors.  The court discussed Guzman's mature age and personal background, noting that he planned and carried out the dangerous crimes despite his understanding of the nature and severity of his conduct.  See United States v. Martin, 520 F.3d 87, 91 (1st Cir.

---

recommendation, and hence, as the government concedes, the waiver of appeal provision in the plea agreement is not enforceable.

2008) (explaining that sentencing decisions are "a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue" (quoting Gall, 552 U.S. at 52)).

Where the district court relied on factors already accounted for in the total offense level, namely, Guzman's insider role, the fact of two robberies, injury, and restraint, the court justified its reliance with an explanation. We have previously held that, "[w]hen a court varies from the GSR, its reasons for doing so 'should typically be rooted either in the nature and circumstances of the offense or the characteristics of the offender.'" Flores-Machicote, 706 F.3d at 21 (quoting Martin, 520 F.3d at 91). When a factor within those § 3553(a) considerations is already included in the total offense level that determines the GSR, the court "must articulate specifically the reasons that this particular defendant's situation is different from the ordinary situation covered by the guidelines calculation." United States v. Zapete-Garcia, 447 F.3d 57, 60 (1st Cir. 2006); see also United States v. Smith, 445 F.3d 1, 6-7 (1st Cir. 2006).

Here, the district court distinguished Guzman's insider participation from the typical "abuse[] . . . of . . . private trust" reflected in the Guidelines. U.S.S.G. § 3B1.3. Specifically, the court explained that, in addition to the immediate consequence of "facilitat[ing] the commission or concealment of the offense," id., Guzman's insider role spoke to

the "boldness" of the conduct and its "planned" and "deliberate" nature. Similarly, while the fact that there were two robberies may have been considered in calculating the total loss amount (which then enhanced the total offense level applicable to Guzman), see id. § 2B3.1(b)(7)(C), the court relied on the number of robberies to emphasize the seriousness or nature of the conduct in imposing an upward variance -- a consideration different in kind from the combined harm or losses. The court also explained how the particular facts of the robberies reinforced the seriousness of the injury and restraint, which collectively differentiated this case from the typical "in and out" robberies to which the Guidelines apply.[4]

"[A] sentencing court's obligation to explain a variance requires the court to offer a plausible and coherent rationale -- but it does not require the court to be precise to the point of pedantry." Del Valle-Rodríguez, 761 F.3d at 177. We conclude

---

[4] In recognizing the fact-specific ways in which the district court interpreted Guzman's insider position and the injury and restraint, we note that we have applied a similarly discerning approach to double-counting arguments in the context of upward adjustments in the Guidelines calculation. There, we have held that "[m]ultiple sentencing adjustments may derive from 'the same nucleus of operative facts while nonetheless responding to discrete concerns.'" United States v. Fiume, 708 F.3d 59, 61 (1st Cir. 2013) (quoting United States v. Lilly, 13 F.3d 15, 19 (1st Cir. 1994)). Indeed, "in the absence of an express prohibition, this court routinely has permitted a single underlying fact to be used more than once when that fact bears upon two separate sentencing considerations." Id.

that the district court did not abuse its discretion in articulating the reasons for an above-GSR sentence.

## B. Substantive Error

Guzman also contends that his sentence is substantively unreasonable because the district court relied on factors already considered in the Guidelines enhancements to impose a sentence "well above" the GSR, even though his conduct was not so egregious as to warrant any variance. The substantive assessment of a criminal sentence is characterized by "a frank recognition of the substantial discretion vested in a sentencing court." Flores-Machicote, 706 F.3d at 20. Where, as here, a court has correctly calculated the GSR, "sentencing becomes a judgment call, and a variant sentence may be constructed based on a complex of factors whose interplay and precise weight cannot even be precisely described." Martin, 520 F.3d at 92 (internal quotation marks omitted).

At the outset, the district court did not abuse its discretion in relying on § 3553(a) factors that overlapped with factors in the Guidelines considerations, given the wide latitude afforded to courts in making sentencing determinations. See generally Flores-Machicote, 706 F.3d at 20 ("[A] sentencing judge may draw upon his familiarity with a case, weigh the factors enumerated in [§ 3553(a)], and custom-tailor an appropriate sentence.") (citing Kimbrough v. United States, 552 U.S. 85, 91

(2007)). Additionally, the district court explained that it was the combination of all the § 3553(a) factors discussed -- some overlapping, others not -- that required a variant sentence to provide "just punishment with what happened."

We also add that a 14-month variance and a 135-month term of imprisonment are not unreasonable in light of the totality of the circumstances. See Del Valle-Rodríguez, 761 F.3d at 176. Consistent with the flexibility accorded to the sentencing court, our substantive review has operated on a sliding scale, on which the greater the variance, "the more compelling the sentencing court's justification must be." Id. at 176-77; see Smith, 445 F.3d at 4; Zapete-Garcia, 447 F.3d at 61.

The variance in this case is modest. The rare cases in which variant sentences were found to be unreasonable involved more extreme variances from the GSR. See United States v. Ortiz-Rodríguez, 789 F.3d 15, 18-20 (1st Cir. 2015) (holding that a sentence "three times greater than the top of the advisory [GSR]" is a "large variance" that required, but lacked, significant justification); Smith, 445 F.3d at 6-7 (holding that a sentence that is less than half of the bottom end of the GSR is unreasonably low); Zapete-Garcia, 447 F.3d at 60-61 (finding a sentence that is eight times the top end of the GSR to be unreasonable). By contrast, we have here a 14-month variance over the 121-month high end of the GSR, which is proportionately smaller than many of the

variances that we have affirmed as reasonable. See, e.g., United States v. Díaz-Arroyo, 797 F.3d 125, 127-30 (1st Cir. 2015) (finding a 27-month variance from the 21-month high end of the GSR to be reasonable); Del Valle-Rodríguez, 761 F.3d at 177 (holding that a 15-month variance over the 105-month top end of the GSR is modest and reasonable); Flores-Machicote, 706 F.3d at 20, 25 (finding a 19-month variance from the 41-month high end of the GSR to be reasonable); Politano, 522 F.3d at 71-72, 75 (finding a 6-month variance from the 18-month top end of the GSR to be reasonable). The district court also justified the modest variance with an adequate rationale, including the personal circumstances of Guzman, the specific ways in which Guzman used his insider position, and the overall seriousness of the offense.[5]

Within "a universe of reasonable sentences," where there is "not a single appropriate sentence," United States v. Oquendo-

---

[5] Guzman suggests that the district court's recognition that departure from the GSR is not appropriate in this case means that variance from the GSR was also not appropriate. Departure and variance, however, are two different concepts. See United States v. Oquendo-Garcia, 783 F.3d 54, 56 (1st Cir. 2015) (noting that departure "refers to specific deviations imposed in accordance with a statute or a specific guidelines provision," whereas a variance "exist[s] as a result of the advisory nature of the guidelines"). Considerations that render a departure inappropriate, such as the lack of prior notice as observed by the district court here, do not necessarily render a variance inappropriate. See, e.g., Irizarry v. United States, 553 U.S. 708, 716 (2008) (holding that advance notice required in departure under Rule 32(h) of the Federal Rules of Criminal Procedure is not required in variance).

Garcia, 783 F.3d 54, 57 (1st Cir. 2015) (quoting United States v. Rivera-González, 776 F.3d 45, 52 (1st Cir. 2015)), the factors relied on by the court "add[ed] up to a plausible rationale" for the modest variance imposed in this case, Martin, 520 F.3d at 91.

Affirmed.