# United States Court of Appeals
## For the First Circuit

No. 15-1627

UNITED STATES OF AMERICA,

Appellee,

v.

JOSHUA J. NIEVES-MERCADO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Howard, Chief Judge,
Thompson and Kayatta, Circuit Judges.

Cathryn A. Neaves on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Francisco A. Besosa-Martínez, Assistant United States Attorney, on brief for appellee.

January 30, 2017

**KAYATTA**, **Circuit Judge**.  The district court sentenced defendant Joshua Nieves-Mercado ("Nieves") to 60 months' imprisonment, a term that exceeded by 9 months the top of the guidelines sentencing range and by 14 months the government's recommendation pursuant to a plea agreement.  Nieves appeals, arguing that the court abused its discretion by considering unreliable evidence, by varying upward based on information already factored into the guidelines sentencing range, and by ignoring "the significant mitigating factor" of his youth. According to Nieves, these errors rendered his sentence procedurally and substantively unreasonable.  We disagree and so affirm.

## I.

We draw the following facts from the plea agreement and change-of-plea colloquy, the undisputed portions of the presentence investigation report ("PSR"), and the sentencing hearing.  See United States v. Rivera-González, 776 F.3d 45, 47 (1st Cir. 2015).

The criminal conduct at issue took place in the early morning hours of March 15, 2013.  Nieves and two other men were traveling westbound on the highway between Río Grande and Carolina in Puerto Rico.  Their vehicle approached an intersection and pulled alongside a red Ford Explorer stopped at the light. Nieves exited the vehicle and carried "a long pointed tip object" to the

driver's side of the Explorer.  He first ordered the driver to get out.  When she did not immediately comply, he opened the driver's side door, yanked the driver from her seat, and pushed her toward the highway lane divider.  Nieves drove away in the Explorer, and the vehicle in which he arrived likewise fled the scene.

Hours later, reports surfaced of three armed individuals disassembling a red Ford Explorer in Canóvanas.  Police officers responded to the scene and observed two men removing parts from the Explorer.  The officers took both men into custody.  Their investigation confirmed that the Explorer was the vehicle carjacked hours earlier.  It also led them to Nieves, whom federal officers arrested the following day.  Nieves waived his constitutional rights and admitted to his participation in the carjacking.

On March 20, 2013, a grand jury returned a one-count indictment charging Nieves and the two other men with carjacking and aiding and abetting in violation of 18 U.S.C. § 2119(1).  Nieves pled guilty to that charge, pursuant to a plea agreement with the government, on September 23, 2013.  The agreement obligates the government to recommend a sentence in "the middle range of the applicable guideline," with no stipulation as to Nieves's criminal history category.  It also includes a sentencing guidelines calculation table that lists Nieves's total offense level as twenty-two, reflecting the following:  a base offense

level of twenty, U.S. Sentencing Guidelines Manual § 2B3.1(a); plus a two-level enhancement because the offense involved carjacking, id. § 2B3.1(b)(5); plus a three-level enhancement because Nieves brandished a dangerous weapon, id. § 2B3.1(b)(2)(E); less three levels because Nieves accepted responsibility, id. § 3E1.1. The parties agreed to seek no further adjustment to, or departure from, the base offense level.

The timely produced PSR mirrors the offense level computation in the plea agreement, finds a criminal history score of zero, and computes Nieves's criminal history category as I. Additionally, the PSR provides a detailed description of the offense conduct according to the reports of investigation. As relevant to this appeal, the PSR states that FBI agents interviewed Nieves's codefendants on the date of their arrest. Both admitted their role in the carjacking and subsequent disassembling of the Explorer, explaining that Nieves approached one of the codefendants after the carjacking, told him where to find the Explorer, and suggested that he remove and sell the radiator to satisfy a debt Nieves owed to that codefendant.

The sentencing hearing took place on April 29, 2015. The district court asked defense counsel whether he had read and examined the PSR. Defense counsel responded that he had and lodged one objection unrelated to the issues on appeal. Defense counsel also confirmed that he had explained the PSR to his client and

that they had discussed it together. He then addressed the court, providing context for a juvenile adjudication briefly referenced in the PSR, and noting Nieves's compliance with the terms of his probation during a previous period of supervision. He also referenced literature calling into question the positive correlation between incarceration and deterrence, and he reported statistics indicating a higher percentage of guidelines sentences in the District of Puerto Rico compared to the national average. Finally, defense counsel argued that offender characteristics including age, employment, and education made Nieves's potential for rehabilitation "tremendous" and his risk of recidivism "low."

The court then heard from Nieves. In his address to the court, he stated, "I must apologize to the victims, because what happened was a momentary thing and I ask them to forgive me." The court responded by questioning Nieves's assertion:

> Mr. Nieves, I think it is very good and proper for you to ask the victims for forgiveness. However you mentioned that this event and what transpired of you committing this carjacking was . . . the result of a spur of the moment thing. However, there is information to the effect that whatever the situation was between you and your two codefendants and whether the three of you were arguing or not, at the time in which the vehicle is found you had stated that you had a debt, you owed money to a codefendant of yours and you told him, take the car, sell the parts and use that to cover for my debt. So it had a purpose, it served a purpose.

Defense counsel interjected that the information on which the court relied "did not come from the defendant" and was instead "an

- 5 -

allegation from the other codefendant." He explained that, although Nieves accepted responsibility for his participation in the carjacking, he had a different account of his motivation and his conduct following the carjacking. Defense counsel questioned the credibility of the allegation reported in the PSR, arguing that it was an "improper factor for the Court to consider" because the court lacked "any elements on the record before it to determine if the codefendants [sic] statement is true and he is not trying to minimize his participation or if our client [sic] version is true and he is trying to minimize his participation." The court made no explicit ruling with respect to the information, instead indicating that it would hear from the government.

After hearing from the government, which did not comment on the disputed evidence, the district court imposed its sentence. It agreed with the total offense level listed in the plea agreement of twenty-two and, applying a criminal history category of I, calculated the applicable guidelines sentencing range as 41 to 51 months of imprisonment. See U.S. Sentencing Guidelines Manual ch. 5, pt. A (Sentencing Table). Turning to the sentencing factors enumerated in 18 U.S.C. § 3553(a), the court discussed "the history and characteristics of the defendant," id. § 3553(a)(1), including Nieves's age, education, employment history, family situation, history of drug abuse, and criminal record. The court also considered "the nature and circumstances of the offense," id.,

- 6 -

such as the events immediately preceding the carjacking and the injury suffered by the victim. It imposed an upwardly variant sentence of 60 months' imprisonment, followed by a term of supervised release not challenged on appeal.

Defense counsel asked the court to reconsider the sentence, noting that it exceeded the government's recommendation and arguing that the additional prison time did not further the goals of punishment set forth in § 3553(a)(2). The court, in denying reconsideration, emphasized that Nieves's actions evinced his "lack of maturity" and "disregard for human life and disregard for others." The court also stated,

> I still have my doubts as to whether this was a way or mechanism of paying a debt. I have to base this on information that is available, that is relevant to the case, given by a person against his own interest per say [sic] in terms of explaining how he was there and why he was there and how he got the vehicle and why this person got to be related.

The court further explained that it "factored in" several considerations, including "his prior record of delinquency, the seriousness of this offense[, and] . . . the leading role that he had in being the one that decided and instructed the other ones."

## II.

Nieves advances several arguments on appeal.[1] First, he argues that the district court impermissibly considered unreliable

---

[1] Nieves's plea agreement contains a waiver of appeal. The government agrees with Nieves that the waiver does not bar this

evidence in determining his sentence. Next, he contends that the court justified the upward variance with factors the guidelines sentencing range already took into account. Additionally, he claims that the court overlooked the importance of his youth, which Nieves declares a "significant mitigating factor." According to Nieves, these errors produced a substantively unreasonable sentence.

## A.

"We review sentencing decisions imposed under the advisory Guidelines, whether outside or inside the applicable [guidelines sentencing range], for reasonableness." United States v. Pantojas-Cruz, 800 F.3d 54, 58 (1st Cir. 2015). Although we customarily apply the abuse of discretion standard to assess reasonableness, "the plain error standard supplants the customary standard of review" when the defendant neglects to preserve an objection before the district court. United States v. Dávila-González, 595 F.3d 42, 47 (1st Cir. 2010). The government contends that the plain error standard applies to certain of Nieves's arguments on appeal, but we sidestep that question because Nieves's arguments fail under even the more favorable abuse of discretion standard.

---

appeal because the court did not sentence Nieves according to the agreement's recommendations.

We review sentences imposed under the advisory guidelines in two phases. In the first phase, we "examine whether the district court committed any procedural missteps." United States v. Rossignol, 780 F.3d 475, 477 (1st Cir. 2015). Such missteps include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the section 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence--including an explanation for any deviation from the Guidelines range." United States v. Rivera-Moreno, 613 F.3d 1, 8 (1st Cir. 2010) (quoting Gall v. United States, 552 U.S. 38, 51 (2007)). We have described our abuse of discretion standard in this context as "multifaceted," as we apply clear error review to factual findings, de novo review to interpretations and applications of the guidelines, and abuse of discretion review to judgment calls. See United States v. Serunjogi, 767 F.3d 132, 142 (1st Cir. 2014) (citing United States v. Leahy, 668 F.3d 18, 21 (1st Cir. 2012)).

In the second phase of our review, we "ask whether the sentence is substantively reasonable." Rossignol, 780 F.3d at 477. Our inquiry "focuses on the duration of the sentence in light of the totality of the circumstances." United States v. Del Valle-Rodríguez, 761 F.3d 171, 176 (1st Cir. 2014). It acknowledges that, although the "sentencing court is under a mandate to consider

a myriad of relevant factors, . . . the weighting of those factors is largely within the court's informed discretion." United States v. Clogston, 662 F.3d 588, 593 (1st Cir. 2011). Our review demands only "a plausible sentencing rationale and a defensible result." United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008).

## B.

Nieves's first argument concerns the PSR's report of a statement made by one of Nieves's codefendants concerning the reasons for disassembling the stolen car. Nieves argues that the district court improperly relied on this out-of-court statement by a codefendant to an FBI agent, whose report of the statement then made it into the PSR. We agree with Nieves that the reported statement can be seen as hearsay, and that the district court relied on it, at least in part. Generally, though, "there is no limitation on the information which a court may consider in sentencing other than that the information bear sufficient indicia of reliability to support its probable accuracy, and evidence not ordinarily admissible under the rules of evidence at trial may be considered." United States v. Berzon, 941 F.2d 8, 21 (1st Cir. 1991). Accordingly, district courts may rely on hearsay statements that bear such indicia of reliability. See United States v. Ramírez-Negrón, 751 F.3d 42, 52 (1st Cir.) ("Reliable hearsay is, of course, admissible during sentencing proceedings."), cert.

denied, 135 S. Ct. 276 (2014); U.S. Sentencing Guidelines Manual § 6A1.3 cmt. ("Reliable hearsay evidence may be considered.").

The report of the statement made by his codefendant was disclosed to Nieves in the PSR. Nieves does not deny that the statement was made, nor does he dispute the context in which it was made. The nature and circumstances of the reported explanation bolster its reliability. The codefendant made an inculpatory statement to law enforcement on the date of his arrest. This was not a statement attendant to plea bargaining, a context that sharpens the codefendant's incentive to shift blame. Instead, it was a near-contemporaneous confession that acknowledged the codefendant's participation not only in the carjacking but also in the additional criminal activity of disassembling the Explorer to sell its parts. Furthermore, the codefendant's statement was consistent with the actions of the codefendants immediately prior to their apprehension by law enforcement: the codefendants had removed one part from the Explorer, which they had placed in their vehicle, and were working on removing the radiator when the police detained them.

In these circumstances, we find no abuse of discretion or legal error by the district court in relying on this evidence at sentencing. See, e.g., United States v. Parra-Gonzalez, 329 F. App'x 887, 889 (11th Cir. 2009) (per curiam) (citing United States v. Gordon, 231 F.3d 750, 761 (11th Cir. 2000)) (finding no clear

error in district court's reliance on codefendants' hearsay statements, even where court did not explicitly address reliability of statements at sentencing, because "hearsay statements by [the] codefendants were supported by sufficient indicia of reliability and [the defendant] had an opportunity to rebut those statements"); United States v. Berry, 258 F.3d 971, 976-77 (9th Cir. 2001) (similarly finding no abuse of discretion in district court's reliance on codefendants' hearsay statements, even where court made no express findings regarding reliability, given "external consistency" of statements).[2]

## c.

Nieves next contends that, apart from the codefendant's statement, the factors relied on by the district court to support the variance "were reiterations of the factors already used to calculate the [guidelines sentencing range]." According to Nieves, the district court "pointed to no particular

---

[2] Nieves does not argue that the district court failed to resolve the dispute over this evidence or used an improper procedure to do so. See Fed. R. Crim. P. 32(i)(3); U.S. Sentencing Guidelines Manual § 6A1.3(a)-(b). We permit implicit reliability determinations as to the evidence considered at sentencing where the basis of the implicit determination is manifest. See United States v. Van, 87 F.3d 1, 3 (1st Cir. 1996) ("Although explicit resolution of disputed material facts is preferable, we have found that the court implicitly resolved the facts when the court's statements and the sentence imposed showed that the facts were decided in a particular way."). Here, the district court expressly found that the statement tended to inculpate the codefendant and that it explained "how he was there and why he was there and how he got the vehicle."

characteristics of either the offense itself or [Nieves] that justified an upward variance." Not so. The district court, before imposing this above-guidelines sentence, discussed not only the existence but also the nature of Nieves's criminal history. See Del Valle-Rodríguez, 761 F.3d at 176 ("We have held that an upward variance may be justified by, say, a finding that the defendant's criminal history score underrepresents the gravity of his past conduct, or by a finding that the [guidelines sentencing range] underestimates the likelihood of recidivism." (citation omitted)); cf. United States v. Santa-Otero, 843 F.3d 547, 550-51 (1st Cir. 2016) (rejecting argument that district court double-counted factor where offense level accounted for mere possession of weapon yet district court based variance on circumstances attendant to that possession). The district court seemed particularly troubled that Nieves's criminal history began at a young age and that the circumstances of the juvenile adjudication bore similarities to the circumstances of this case insofar as Nieves, when upset or emotional, resorted to aggression and violence. Additionally, the district court discussed the emotional injury suffered by the victim of the carjacking. Nieves does not explain how the guidelines sentencing range accounted for that factor.

Nor do we find persuasive Nieves's argument that the district court abused its discretion by giving short shrift to the role of his youth in this offense and the juvenile offense.

- 13 -

According to Nieves, although his counsel pointed to neuroscientific evidence that "an adolescent is prone to impulsive, rash behavior," the district court "essentially gave this factor no weight in considering the sentence." Yet the district court, before imposing its sentence, specifically noted Nieves's age at the time of this offense and the juvenile offense. Later, in response to the motion for reconsideration, the district court stated that--even assuming "his frontal lobe has not developed and he has not matured enough"--Nieves's actions reflected not just a "lack of maturity" but also a "disregard for human life and disregard for others." Thus, "[t]he defendant's real complaint is not that the court overlooked [his youth] but that it weighed th[at] factor[] less heavily than he would have liked." Rivera-González, 776 F.3d at 50. However, "that type of balancing is, within wide limits, a matter for the sentencing court . . . [and t]hose wide limits were not exceeded, or even closely approached, in this instance." Id. (citations omitted).

## D.

Finding no procedural missteps, we consider Nieves's final argument that his sentence is substantively unreasonable. According to Nieves, his sentence lacks a "plausible rationale" because "[t]he court simply gave no reason specific either to [Nieves's] history or to the crime itself that justified" the variance. We have already rejected this contention in finding

- 14 -

that the district court gave reasons for its variance beyond those factored into the guidelines sentencing range calculation--namely, the particulars of Nieves's criminal history as well as the emotional harm suffered by his victim.  The district court's articulation of those reasons was sufficiently clear, and it reflected a "plausible, albeit not inevitable, view of the circumstances sufficient to distinguish this case from the mine-run of cases covered by the [guidelines sentencing range]."  Del Valle-Rodríguez, 761 F.3d at 177.  We are satisfied that the district court's upward variance of 9 months on top of a 41-to-51-month range constitutes a "defensible result" in these circumstances, see Martin, 520 F.3d at 96, and thus we find the sentence substantively reasonable.

## III.

For the foregoing reasons, we affirm Nieves's sentence.