# United States Court of Appeals
## For the First Circuit

Nos. 21-1705,
    21-1707

UNITED STATES OF AMERICA,

Appellee,

v.

ÁNGEL MANUEL CARMONA-ALOMAR,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Barron, Chief Judge,
Thompson and Montecalvo, Circuit Judges.

Héctor Sueiro-Álvarez, with whom Eric Alexander Vos, Federal
Public Defender, and Franco L. Pérez-Redondo, Assistant Federal
Public Defender, were on brief, for appellant.
Gregory B. Conner, Assistant United States Attorney, with
whom W. Stephen Muldrow, United States Attorney, and Mariana E.
Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate
Division, were on brief, for appellee.

July 22, 2024

**BARRON**, **Chief Judge**.  In these consolidated appeals, Ángel Manuel Carmona-Alomar ("Carmona") challenges both the sixty-month prison sentence that he received for his machinegun-possession-related offenses and the consecutive two-year prison sentence that he also received for the revocation of his term of supervised release.  We affirm.

## I.

In 2017, Carmona was a passenger in a vehicle that officers of the Puerto Rico Police Department pulled over in Guaynabo, Puerto Rico.[1]  Based on what the officers referred to as an odor of marijuana, they conducted a search of the vehicle's passenger compartment and discovered, as relevant here, a 9mm Glock pistol that had been modified to shoot automatically, seventy-four rounds of 9mm ammunition, marijuana, and Percocet pills.  Carmona admitted to the police that the pistol and ammunition belonged to him.

Following the search, Carmona was charged in the United States District Court for the District of Puerto Rico with one count of unlawful possession of a firearm by a prohibited person (a drug user) in violation of 18 U.S.C. § 922(g)(3), and one count

---

[1] We draw the facts from the uncontested portions of the defendant's presentence investigation report ("PSR") and transcripts of the defendant's change of plea and sentencing hearings.  See United States v. Edwards, 857 F.3d 420, 421 n.1 (1st Cir. 2017).

- 1 -

of unlawful possession of a machinegun in violation of 18 U.S.C. § 922(o). Carmona pleaded guilty to the charges, and, in February 2018, he was sentenced to thirty months' imprisonment to be followed by three years' supervised release.

Carmona began serving his supervised release term in April 2019. As a condition of his supervised release, he was prohibited from committing another federal, state, or local crime.

On September 9, 2020, an officer with the Puerto Rico Police Department informed the United States Probation Office ("Probation") that Carmona had been seen placing what was believed to be a firearm in his waistband. The same day, pursuant to the conditions of Carmona's supervised release, Probation officers located Carmona, searched him and the vehicle that he had been driving, and recovered a .45 caliber Glock pistol modified to shoot automatically and a total of fifty-six rounds of .45 caliber ammunition.

The following day, Probation filed a notice of violation of supervised release in Carmona's 2017 case and requested a warrant for his arrest. Carmona was subsequently arrested and ordered detained pending further proceedings related to the violation of the terms of his supervised release.

On September 23, 2020, a federal grand jury in the District of Puerto Rico returned a new indictment in relation to the incident on September 9, 2020. Carmona was charged with

possessing a firearm as a prohibited person (this time, a felon) in violation of 18 U.S.C. § 922(g)(1) and possessing a machinegun in violation of 18 U.S.C. § 922(o).  Carmona entered a straight plea of guilty to both new charges.

In preparation for sentencing in relation to Carmona's new § 922 convictions, Probation prepared a presentence investigation report ("PSR") pursuant to Federal Rule of Criminal Procedure 32.  In accord with United States Sentencing Guideline ("Guideline") § 3D1.2(d),[2] Probation grouped together Carmona's convictions under §§ 922(g) and (o) for purposes of calculating his Guidelines sentencing range.  Applying Guideline § 2K2.1, Probation set Carmona's base offense level at 22 based on Carmona's new offense having involved a machinegun and on Carmona's having committed the new offense "subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense" -- namely, his prior §§ 922(g) and (o) convictions, which, per Guideline § 3D1.2(d), also counted together as one offense.  Probation then subtracted three levels for Carmona's acceptance of responsibility per Guideline § 3E1.1, leaving Carmona with a total offense level of 19.

---

[2] Because Carmona's PSR was prepared in August 2021, unless otherwise noted, our citations to the Guidelines are to the 2018 edition, which was then in effect.

Probation determined Carmona's criminal history category to be III. In making that determination, Probation accounted for the prior §§ 922(g) and (o) convictions and, per Guideline § 4A1.1(d), added two criminal history points to reflect that Carmona had committed the new offense while he was serving a "criminal justice sentence" -- specifically, the term of supervised release that he was serving based on his prior §§ 922(g) and (o) convictions. Based on an offense level of 19 and a criminal history category of III, Probation determined that Carmona's Guidelines sentencing range was thirty-seven to forty-six months' imprisonment. See U.S.S.G. ch. 5, pt. A (sentencing table).

Carmona's PSR also described an incident that had occurred on February 26, 2019, after Carmona had been transferred from U.S. Bureau of Prisons ("BOP") custody to a halfway house to serve the balance of the prison sentence he had received for his prior §§ 922(g) and (o) convictions. On that date, a halfway house employee had conducted a pat-down of Carmona as he had returned to the facility, felt a "hard object near [Carmona's] groin area," and requested that Carmona display the object. Carmona, "disobey[ing] the direct order" and walking away from the employee, had allegedly shouted, "This fucking bald guy thinks I have something, wait until I get to him on the streets." As a result

of this incident, Carmona had been removed from the halfway house and returned to BOP custody.

The parties then submitted sentencing memoranda to the District Court. Carmona's sentencing memorandum requested a total sentence of thirty-seven months' incarceration and argued that "there [were] no aggravating facts relating to the offense in this case that [were] not fully addressed by the applicable [S]entencing [G]uideline." Carmona's sentencing memorandum also cited to eighteen "cases with similarly situated defendants . . . who received a Guidelines[] sentence in [the District of Puerto Rico] for convictions under 18 U.S.C. § 922(o)" for possession of a machinegun, all of whom were sentenced to between twelve and thirty-three months' incarceration, and reminded the District Court of its obligation under 18 U.S.C. § 3553(a)(6) to consider at sentencing "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

The government's sentencing memorandum advocated for a sentence of forty-six months' incarceration. Citing to our prior statement in United States v. Flores-Machicote, 706 F.3d 16, 23 (1st Cir. 2013), that "the incidence of particular crimes in the relevant community appropriately informs and contextualizes the relevant need for deterrence" in sentencing, the government urged

the District Court in sentencing Carmona to "take in[to] consideration the problem of gun violence in Puerto Rico."

In support of its position, the government cited to statistics regarding the prevalence of firearms offenses in Puerto Rico compared to the rest of the United States, the relatively high percentage of murders in Puerto Rico involving firearms, and the fact that a 2019 study by InSight Crime had ranked San Juan the second-deadliest city in Latin America. The government also argued that Carmona had demonstrated an "affinity for loaded machine guns, large quantities of ammunition and extended magazines." In support of that assertion, the government pointed to Carmona's prior §§ 922(g) and (o) convictions, as well as photographs obtained from Carmona's cell phone that purportedly showed him posing with firearms. The government further submitted that Carmona's commission of a second machinegun offense after receiving a sentence for his first machinegun offense that was "similar . . . to the one[s] cited by the defense in its list of comparable sentences in this District for first[-time] offenders" indicated that he "did not avail himself of the prior sentence and term of supervised release previously imposed by the Court."

Carmona filed a response to the government's sentencing memorandum. In the response, he objected to the government's reliance on "faulty" and outdated statistics concerning Puerto Rico's problem of gun violence. Carmona also asserted that he was

- 6 -

being sentenced for "a simple gun possession offense" and argued -- based on our prior decisions in United States v. Rivera-Berríos, 968 F.3d 130 (1st Cir. 2020) and United States v. Carrasquillo-Sánchez, 9 F.4th 56 (1st Cir. 2021) -- that for a simple machinegun possession offense the District Court was not permitted to rely at sentencing on the "generic consideration of purported gun violence in Puerto Rico."

On August 19, 2021, the District Court convened a hearing to sentence Carmona for his new §§ 922(g) and (o) convictions. At the hearing, defense counsel argued that Carmona's was "an ordinary machine gun case." Defense counsel argued that Carmona's case was "ordinary" because his Guidelines sentencing range accounted for his full "nature and history": his total offense level included an upward adjustment for his prior §§ 922(g) and (o) convictions, and his criminal history category was also increased to reflect that he had been on supervised release for the prior §§ 922(g) and (o) convictions when he committed the new machinegun possession offense.

The District Court and defense counsel then engaged in a colloquy about the permissibility of imposing an upwardly variant sentence based on the District Court's "societal concern" about the "dangers posed by machine guns." Defense counsel argued that because the amount of ammunition with which Carmona had been found was comparable to the amounts of ammunition at issue in

- 7 -

Rivera-Berríos and United States v. García-Pérez, 9 F.4th 48 (1st Cir. 2021), Carmona's conduct was "entirely consistent with simple possession of a machine gun as found by the First Circuit."

Defense counsel acknowledged that those same cases stood for the proposition that "community-based factors can be a proper deterrent consideration," but emphasized that that was so only if the sentencing court "assessed [those community-based factors] in case[-]specific terms." And, defense counsel argued, because Carmona had simply possessed the machinegun and ammunition, was not found to have used the machinegun, had no criminal history other than his prior §§ 922(g) and (o) convictions, and had "admitted to the possession of the weapon for purposes of protecting himself," his case was not "akin to anything that is involved in the societal harm that this Court is worried about" with regard to the rate of gun violence in Puerto Rico.

This colloquy culminated in the following exchange:

**District Court:**    Well, wait a minute. He's done it twice. He's done it twice.

**[Defense Counsel]:**    Yes.

**District Court:**    His previous case was exactly the same as this one, possession of a machine gun.

**[Defense Counsel]:**    That's right. And that's taken into account in the [G]uidelines.

**District Court:**    Yes, but I'm saying that, you know, that shows the problem that there is

- 8 -

out there with young people with illegal machine guns.

**[Defense Counsel]:** And that's why it's factored into the offense level, as well as his Criminal History Category. . . . So all of the concerns that the Court has . . . all of those things are already built into and taken into account when fashioning and when they formulated the [Guidelines] and the range. So that's why, when I started off with my argument, I said this is an ordinary machine gun case. This is. Everything about this case, everything about [Carmona's] nature and history, everything about the nature and circumstances of the offense, everything.

**District Court:** Well, no.

**[Defense Counsel]:** Everything is taken into account.

**District Court:** I think what the Circuit has held is that in -- an ordinary machine gun case is a case where someone possesses a machine gun and really has no criminal history.

**[Defense Counsel]:** Which case is that?

**District Court:** All the ones that you've cited in your sentencing memorandum.

**[Defense Counsel]:** The cases I cited in my sentencing memorandum were for the purposes of trying to show the Court that there's sometimes a disparity.

**District Court:** Yes, but they may be ordinary . . . machine gun cases[] because they're all either no criminal history, which -- and the other ones that you cite that had a prior conviction, they were all Criminal History I,

> except for two of them, which were Criminal History Category II.

**[Defense Counsel]:** Yes. And that's why, when I made my recommendation to the Court about what I felt was a reasonable and appropriate sentence, that -- I believe that my recommendation is higher than all of those cases that I cited.

**District Court:** No. Well, not really. It's higher, because the criminal history is higher.

The government thereafter advocated for a prison sentence of forty-six months. The government argued that "in this case, what we have [are] very specific facts that are tied directly to gun violence in Puerto Rico." The government noted that "[t]his [was] the second time that this defendant ha[d] been arrested on a public thoroughfare, on streets with a machine gun." The government also pointed to the 2019 halfway house incident, asserting that it was "very clear that 'wait until I get to him on the streets' [was] a threat" and pointing out that "[t]he streets [were] where the defendant in this case was seen by a policeman carrying a machine gun." The government argued as well that 74 percent of "firearm murders on this island are committed on public throughways" and that of the "367 murders [in Puerto Rico] this year, [fifty-one] more than last year, . . . according to police statistics, over [ninety] percent of those are with guns." As such, the government contended, "numerous specific details about

this case, the specific characteristics of this defendant's arrest, the kinds of firearms, where those firearms are found[,] . . . publicly available statistics from the Police of Puerto Rico about . . . where firearm violence occurs, [and] the fact that this defendant made violent threats to an individual in a halfway house, when he should have been on his best behavior" all "support[ed] the sentence recommended by the government."

At sentencing, the District Court first calculated Carmona's Guidelines sentencing range and stated that it had "also considered the other sentencing factors set forth in" 18 U.S.C. § 3553(a). Then, noting that Carmona "was in possession of a loaded Glock pistol . . . modified to operate as a machine gun" and that "[o]ther photos show [his] affinity to firearms," the District Court stated the following:

> A modern machine gun can fire more than a thousand rounds a minute, which allows a shooter to kill dozens of people within a matter of seconds. Short of bombs, missiles, and biochemical agents, the Court can conceive of few weapons that are more dangerous than machine guns. A machine gun is unusual, and outside of a few government related uses, machine guns largely exist on the black market. In short, machine guns are highly dangerous and unusual weapons that are not typically possessed by law abiding citizens for lawful purposes. This is Mr. Carmona's second offense for illegally possessing a firearm, a machine gun, to be exact.

The District Court went on to describe the 2019 halfway house incident, noting that Carmona "was transferred to the

- 11 -

[f]ederal [p]rison . . . because he threatened an employee of the halfway house." The District Court asserted that "[i]t appears that [thirty] months of imprisonment for the previous case had no effect on Mr. Carmona, and that he has made no effort to rehabilitate himself."

The District Court continued that Carmona "has demonstrated a lack of remorse for his wrongdoing, and a lack of respect for the law and this Court. He committed the same crime for which he was previously sentenced, and the Court has to say it is not nice to commit the same offense twice." The District Court next noted that § 3553(a) "requires the Court to consider preventing criminal behavior by the population at large," that "the [United States] Sentencing Commission has found [that] longer sentences involving firearms have [a] deterren[t] effect," and that "during this year, more murders have been committed in Puerto Rico than were . . . committed at this time last year."

Finally, the District Court announced that "in this case, because of the factors that have been mentioned by the Court, a sentence above the [G]uideline range reflects the seriousness of the offenses, promotes respect for the law, protects the public from further crimes by Mr. Carmona, and addresses the issues of deterrence and punishment." The District Court then imposed concurrent sentences of sixty months' incarceration for each of Carmona's new § 922 convictions -- which was a prison sentence

- 12 -

fourteen months above Carmona's Guidelines sentencing range -- to be followed by three years of supervised release.

Defense counsel objected to both the procedural and substantive reasonableness of the sentence, arguing that the District Court had not given "case-specific reasons for the variance of such a magnitude," had "failed to give proper treatment [to] the mitigating factors," and had "failed to adequately explain the chosen sentence." On the Statement of Reasons form explaining Carmona's sentence, the District Court enumerated the bases for its imposition of an upwardly variant sentence. The listed reasons were: "the lack of respect for the law, the lack of remorse as the defendant committed the exact same offense after he was sentenced to a [thirty-]month incarceration period[,] [t]he seriousness of the offense, the fact that this district is suffering from much gun violence, specifically machineguns like the one Mr. Carmona had," and that "sentencing the defendant to [sixty] months was enough deterrence since lengthy sentences represent more deterrence than short sentences."

On the same day that Carmona was sentenced for his new §§ 922(g) and (o) convictions, the District Court held a second hearing to impose a sentence for the revocation of the term of supervised release that Carmona had been serving for his prior §§ 922(g) and (o) convictions. Defense counsel requested a sentence of thirty days' incarceration to be served concurrently

with Carmona's sixty-month prison sentence for the new §§ 922(g) and (o) convictions; the government requested a sentence of two years' incarceration -- the statutory maximum for the revocation of supervised release for a § 922(o) conviction, see 18 U.S.C. §§ 3583(e)(3), 924(a)(2), 3559(a)(3) -- to be served consecutively.

Applying Guidelines §§ 7B1.1-1.4, the District Court determined that Carmona had committed a Grade A violation of his term of supervised release, which, combined with Carmona's criminal history category of I (as calculated at the time of sentencing for his prior §§ 922(g) and (o) convictions), yielded a Guidelines sentencing range of twelve to eighteen months' incarceration. Taking into account "the factors set forth in . . . Section 3553(a), and the seriousness of Mr. Carmona's violation" and noting that the revocation of supervised release had been prompted by "Mr. Carmona's second indictment for the same charge[s], being a prohibited person in possession of a firearm, and in possession of a machine gun, and ammunition, and magazines," the District Court concluded that "a statutory sentence is a sentence sufficient but not greater than necessary" to fulfill the purposes of sentencing. The District Court then imposed an upwardly variant, statutory maximum term of two years' imprisonment for the revocation of Carmona's supervised release, to be served consecutively to the sixty-month sentence it had

- 14 -

imposed for Carmona's new §§ 922(g) and (o) convictions, followed by a two-year term of supervised release to be served concurrently with the three-year supervised release term for his new §§ 922(g) and (o) convictions. Carmona objected to the revocation sentence as procedurally and substantively unreasonable.

Carmona timely appealed the imposition of both sentences, and the appeals were consolidated.

## II.

Our review of preserved sentencing challenges is for abuse of discretion. United States v. Dávila-Bonilla, 968 F.3d 1, 9 (1st Cir. 2020). Where a defendant raises claims of both procedural and substantive unreasonableness in sentencing, "first we see if 'the sentence is procedurally reasonable (that is, free from non-harmless procedural error)' and then we see if 'it is substantively reasonable.'" Id. (quoting United States v. Nuñez, 840 F.3d 1, 4 (1st Cir. 2016)).

In reviewing claims of procedural unreasonableness, we apply a "multifaceted" abuse of discretion standard. United States v. Reyes-Torres, 979 F.3d 1, 7 (1st Cir. 2020) (quoting United States v. Nieves-Mercado, 847 F.3d 37, 42 (1st Cir. 2017)). In doing so, we review de novo the resolution of issues of law, including interpretation and application of the Guidelines. Id. We review for clear error, however, findings of fact. Id.

As to the question of substantive reasonableness, "[a] sentence is substantively reasonable so long as the sentencing court has provided a 'plausible sentencing rationale' and reached a 'defensible result.'" United States v. Sayer, 916 F.3d 32, 39 (1st Cir. 2019) (quoting United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008)). Our review of substantive reasonableness "is limited to determining whether [the district court's] sentence, 'in light of the totality of the circumstances, resides within the expansive universe of reasonable sentences.'" United States v. Rossignol, 780 F.3d 475, 477 (1st Cir. 2015) (quoting United States v. King, 741 F.3d 305, 308 (1st Cir. 2014)). When a sentencing court imposes an upwardly variant sentence, "its reasons for doing so 'should typically be rooted in either the nature and circumstances of the offense or the characteristics of the offender,'" and "the factors deemed relevant by the sentencing court 'must add up to a plausible rationale' for the sentence imposed and 'must justify a variance of the magnitude in question.'" Flores-Machicote, 706 F.3d at 21 (quoting Martin, 520 F.3d at 91).

## III.

We begin with Carmona's challenges to the upwardly variant sixty-month prison sentence that he received for his most recent convictions under §§ 922(g) and (o). After considering his procedural unreasonableness challenges to this sentence and

finding no merit to any of them, we turn to his substantive unreasonableness challenge to the sentence. See Dávila-Bonilla, 840 F.3d at 9. We conclude that that challenge is also meritless.

**A.**

**1.**

Carmona first argues that the sixty-month prison sentence he received for his new §§ 922(g) and (o) convictions was procedurally unreasonable because the District Court made an error of law that "tainted the rest of" the sentencing rationale. He bases this contention on the District Court's statement at one point during the sentencing hearing that "an ordinary machinegun case is a case where someone possesses a machinegun and really has no criminal history." Carmona contends that this statement revealed the District Court's "fundamental misunderstanding of the law: that a mine-run § 922(o) case is a case in which the defendant has no criminal history."

Carmona correctly points out that it is well-settled law that "[t]he [S]entencing [G]uidelines are meant to cover the mine-run of particular crimes." Rivera-Berríos, 968 F.3d at 137 (citing Spears v. United States, 555 U.S. 261, 264 (2009) (per curiam)). He is also right that a "mine-run" case is one that falls into the "heartland" of cases "to which the [Sentencing] Commission intends individual Guidelines to apply." Spears, 555 U.S. at 264 (cleaned up).

- 17 -

Against this backdrop, Carmona contends that the District Court clearly misstated the law by asserting, in a portion of a more fulsome statement, that "an ordinary machine gun case is a case where someone possesses a machine gun and really has no criminal history" (emphasis added). A § 922(o) offense can be "mine-run," Carmona explains, even if the defendant has a prior criminal background.

In fact, Carmona claims, his was "a mine-run case precisely because [he] was previously convicted of the same offense, a factor already accounted for" in his Guidelines sentencing range. After all, Carmona notes, his prior §§ 922(g) and (o) convictions both contributed to his criminal history category of III and increased his base offense level by two points to reflect his prior conviction for "either a crime of violence or a controlled substance offense."

We do not disagree that the Guidelines expressly account for a machinegun-possession-related offense having been committed by a person with a criminal history. We thus do not disagree that the Guidelines yield a recommended sentencing range for such a "mine-run" offender. See Sent'g Table, U.S. Sent'g Guidelines Manual ch. 5, pt. A (U.S. Sent'g Comm'n 2023) (accounting for criminal history categories I-VI). But to determine whether the District Court was laboring under a contrary understanding -- as Carmona contends is the case -- we must consider the statement by

- 18 -

the District Court that is at issue in its full context and not in isolation. United States v. Lanza-Vázquez, 799 F.3d 134, 143 (1st Cir. 2015). When we do, we cannot say that the statement by the District Court on which Carmona seizes reflects a mistaken view of the law.

The colloquy during which the District Court made the assertedly problematic statement -- "an ordinary machinegun case is a case where someone possesses a machinegun and really has no criminal history" -- is best understood to concern our line of cases exemplified by Rivera-Berríos and García-Pérez and not, in general, what constitutes a mine-run machinegun possession offense. During the colloquy, defense counsel was relying on Rivera-Berríos and García-Pérez to argue that the specific facts of Carmona's case could not support the District Court's varying upward based on concerns about machinegun violence in Puerto Rico because Carmona's conduct was "entirely consistent with simple possession of a machine gun as found by the First Circuit" in those cases (emphasis added). In responding to the concern the District Court expressed with respect to that discussion about Rivera-Berríos and García-Pérez -- in which the District Court emphasized that Carmona's "previous case was exactly the same as this one, possession of a machine gun" -- defense counsel stated, "[A]ll of these concerns that the Court has, that he's done it twice . . . are already built into and taken into account when

- 19 -

fashioning . . . the [Guidelines] and the range. So that's why, when I started off with my argument, I said this is an ordinary machine gun case" (emphasis added).

It was only at that point in the colloquy that the District Court used the specific words -- "an ordinary machine gun case is a case where someone possesses a machine gun and really has no criminal history" -- that Carmona contends are problematic. But Carmona wrenches those words from the fuller statement in which the District Court made them: "I think what the Circuit has held is that in -- an ordinary machine gun case is a case where someone possesses a machine gun and really has no criminal history." And he also wrenches that fuller statement from the context in which it was made.

Specifically, the sentencing transcript shows that, in response to the full statement by the District Court about "what the Circuit has held," defense counsel asked, "Which case is that?" and the District Court at that point replied, "All the ones that you've cited in your sentencing memorandum." The District Court then went on to explain that those cited cases "may be ordinary . . . machine gun cases[] because . . . they were all Criminal History I, except for two of them, which were Criminal History Category II."

In view of this context, we agree with the government's characterization of the statement by the District Court that

grounds this challenge by Carmona. That is to say, we agree that the statement indicates that the District Court was of the view that, under the Rivera-Berríos line of cases, it could not rely on community-based concerns about machinegun violence to vary upward in an "ordinary" case, and that such a case is one in which no "special characteristic attributable either to the offender or to the offense of conviction serves to remove a given case from the mine-run." Rivera-Berríos, 968 F.3d at 137. And, we also agree with the government that the statement in question further reflects the District Court's assessment that Carmona's case was distinguishable from such an "ordinary" case because -- unlike the defendants in the Rivera-Berrios line -- Carmona had the "special characteristic" of having committed not merely a prior offense but a prior machinegun possession offense. Id.

This understanding of the District Court's statement about "what the Circuit has held" accords with the District Court's follow-on statement that the eighteen cases cited by Carmona in his sentencing memorandum were "ordinary" insofar as the defendants in those cases had nonexistent or negligible criminal histories -- and thus were distinguishable from Carmona himself, who had a prior history of machinegun possession. Indeed, as Carmona's sentencing memo itself explained, those eighteen cases, like Rivera-Berríos and García-Pérez, involved defendants who either had no criminal history or a very minor one. By contrast,

- 21 -

Carmona had a prior conviction for machinegun possession specifically and so, to use the District Court's words, had "done [the underlying offense] twice."

Notably, this conclusion about how to understand the District Court's statement also accords with the questions that the District Court later asked of the government during the sentencing colloquy about Rivera-Berríos and Carrasquillo-Sánchez. Those questions reflect the District Court's correct understanding that, under those cases, case-specific factors would need to be present to justify reliance on community characteristics to support an upwardly variant sentence in Carmona's case.

We thus are not persuaded that the portion of the District Court's statement about what constitutes an "ordinary" case on which Carmona zeroes in demonstrates that the District Court was relying on a misunderstanding of the relevant law in imposing the upwardly variant sentence. Rather, from all that we can tell from the transcript, the District Court understood that community characteristics can be relied on to support an upwardly mobile sentence only if they are considered in conjunction with case-specific factors.

### 2.

Carmona next contends that the District Court procedurally erred by basing Carmona's upwardly variant sentence for his new §§ 922(g) and (o) convictions on four "factors already

accounted for in his [G]uideline[s] calculation": (1) his previous §§ 922(g) and (o) convictions; (2) "the dangerous nature of a machinegun"; (3) the fact that Carmona was on supervised release at the time of his offense; and (4) "generic, universal concerns applicable to every machinegun case." Carmona is right to point out that it is "settled beyond hope of contradiction" within our Circuit that "when a sentencing court relies on a factor already accounted for by the [S]entencing [G]uidelines to impose a variant sentence, [it] must indicate what makes that factor worthy of extra weight." Rivera-Berríos, 968 F.3d at 136 (quoting United States v. Díaz-Lugo, 963 F.3d 145, 155 (1st Cir. 2020) (alteration in original)). But the challenge still fails.

Carmona's criminal history category -- which accounts for all of a defendant's prior criminal convictions, see U.S.S.G. § 4A1.1 -- reflected his prior §§ 922(g) and (o) convictions, as well as the fact that he was serving a term of supervised release when he committed the new machinegun possession offense. Moreover, Carmona's offense level was adjusted to account for a prior "felony conviction of either a crime of violence or a controlled substance offense," and so his prior §§ 922(g) and (o) convictions were also accounted for in that sense. But the District Court's variance from Carmona's resulting Guidelines sentencing range rested on more than Carmona's prior criminal history in a general sense, or even his prior "felony conviction of either a crime of violence or

a controlled substance offense," because the District Court emphasized the fact that Carmona's prior convictions had been under the very same provisions prohibiting machinegun possession by prohibited persons. Yet, the Guidelines did not account for that factor in identifying the recommended sentencing range in Carmona's case. We thus cannot conclude that Carmona's previous convictions for the same conduct of possessing a machinegun as a prohibited person was "a factor already accounted for in the [S]entencing [G]uidelines," such that the District Court was required to "indicate what ma[de] that factor worthy of extra weight" in relying on it to justify an upward variance in Carmona's case. United States v. Fields, 858 F.3d 24, 32 (1st Cir. 2017) (citing United States v. Zapete-Garcia, 447 F.3d 57, 60 (1st Cir. 2006)).

Indeed, we have previously affirmed the imposition of upwardly variant sentences for firearms offenses based at least in part on the defendant's previous conviction for the same or a similar offense. See, e.g., United States v. Pedroza-Orengo, 817 F.3d 829, 834 (1st Cir. 2016) (affirming an upwardly variant sentence for a firearm offense where "the district court highlighted the fact that [the defendant] had committed the instant offense within a year of his release from incarceration for a prior firearms offense"). Carmona makes no effort to distinguish his

circumstances from those at issue in those cases, nor do we see any basis on which to do so ourselves.

Carmona does also object that the District Court procedurally erred in imposing an upwardly variant sentence by relying in part on "the dangerous nature of a machinegun," the fact that Carmona was on supervised release at the time of the offense, and "generic, universal concerns applicable to every machinegun case." Carmona contends that is so because the Guidelines already account for each of those factors. Carmona fails to explain, however, why the mere fact that the District Court gave some weight to those factors in explaining the basis for the sentence shows that the District Court's sentence was procedurally unreasonable.

As we have explained, the District Court also based the sentence in part on the unaccounted-for factor described above -- namely, Carmona's having previously been convicted of possessing a machinegun as a prohibited person under §§ 922(g) and (o). And, given that the District Court identified that factor in explaining the reason for the variance, we do not see any basis for concluding that it was procedural error for the District Court also to refer to these separate factors, as they

helped to establish the Guidelines sentencing range itself from which the sentence that was imposed upwardly varied.[3]

## 3.

Carmona also claims that the upwardly variant sentence was procedurally unreasonable because the District Court "fail[ed] to establish a case-specific nexus between [his] case and its community concerns" about machinegun violence in Puerto Rico. But our case law makes clear that "a sentencing judge may consider community-based and geographic factors" in crafting an appropriate criminal sentence so long as the sentencing court's "emphasis on factors that are not specifically tied to either the offender or the offense of conviction" does not "go too far."

---

[3] For the same reason, Carmona's procedural reasonableness challenge also fails insofar as it is premised on the District Court's having based the upwardly variant sentence in part on factors that he argues could not in and of themselves support an upward variance, including Carmona's history of drug use, the number of rounds of ammunition at issue, Carmona's employment status, the 2019 halfway house incident, and photographs included in the government's sentencing memorandum that allegedly depicted Carmona brandishing firearms and which the District Court characterized as "show[ing] Mr. Carmona's affinity to firearms." Further, by failing to object to the District Court's reliance on the photographs below, Carmona waived his argument on appeal that the photographs were "unreliable" because the untimeliness of the government's sentencing memorandum meant that Carmona could not "adequately respond" to its contents. See United States v. Slade, 980 F.2d 27, 30 (1st Cir. 1992) ("It is a bedrock rule that when a party has not presented an argument to the district court, she may not unveil it in the court of appeals.").

Flores-Machicote, 706 F.3d at 22-24. The District Court did not go too far here.

Carmona analogizes his case to our line of decisions in Rivera-Berríos, Carrasquillo-Sánchez, and García-Pérez. He argues that because his was a "mere possession" offense, the District Court's reliance on generalized concerns about machinegun violence in Puerto Rico was impermissibly "unmoored from any individual characteristics of either [Carmona] or the offense of conviction." In each of these cases, the defendant was convicted of unlawful possession of a machinegun within Puerto Rico and the sentencing court imposed an upwardly variant sentence after "ma[king] pellucid that the driving force behind the upward variance . . . was the nature of the firearm that the [defendant] possessed" in light of the sentencing court's perception of the problem of machinegun violence in Puerto Rico. Rivera-Berríos, 968 F.3d at 135.

Those cases are distinguishable from Carmona's. The sentencing court in each of them pointed to the dangerousness of machineguns and the problem of machinegun violence in Puerto Rico. But the sentencing court in each case emphasized "the nature of the firearm involved in the offense of conviction" while failing to provide "an explanation as to how [the defendant's] crime differed from the mine-run of machine gun possession cases within the contemplation of the sentencing guidelines." Id. at 136; see

also Carrasquillo-Sánchez, 9 F.4th at 61 ("The District Court was clear . . . that 'the driving force behind the upward variance' was, in its own words, 'the possession of this type of weapon' itself." (internal citation omitted) (quoting Rivera-Berríos, 968 F.3d at 135)); García-Pérez, 9 F.4th at 53-54 ("The District Court here, just like the district court in Rivera-Berríos . . . failed to explain why the defendant's machinegun possession 'was entitled to extra weight.'" (quoting Rivera-Berríos, 968 F.3d at 136)).

Here, by contrast, the District Court did point "in case-specific terms" to the relevance to Carmona's sentence of its concerns about machinegun violence rates in Puerto Rico. Carrasquillo-Sánchez, 9 F.4th at 61 (citation omitted). Specifically, the District Court relied on the facts that Carmona's "previous case was exactly the same as this one, possession of a machine gun," that "he committed this case while serving his supervised release term" for his previous §§ 922(g) and (o) convictions, and that the 2019 halfway house incident had resulted in his return to prison "because he [had] threatened an employee" -- all of which, in the District Court's view, reflected Carmona's "lack of respect for the law."

Indeed, the transcript of Carmona's sentencing hearing reflects that the District Court cited to Carmona's status as a second-time §§ 922(g) and (o) offender in direct response to defense counsel's statement that sentencing courts can consider

- 28 -

such community-based concerns at sentencing so long as "the defendant's possession of a machine gun had . . . anything to do with the problem as the Court sees it."  The District Court made the nexus clearer still by stating that Carmona's status as a second-time §§ 922(g) and (o) offender "show[ed] the problem that there is out there with young people with illegal machine guns." Carmona's case is therefore distinguishable from Rivera-Berríos, Carrasquillo-Sánchez, and García-Pérez insofar as the District Court here did anchor its reliance on its understanding of Puerto Rico's machinegun problem within the specific characteristics of Carmona's offense.[4]  On this record, then, we conclude that the District Court did not abuse its discretion in relying partly on the incidence of firearms offenses in Puerto Rico to impose an

---

[4] Carmona does advance an alternative argument as to why the District Court erred in relying on statistics about firearms and violent crime within Puerto Rico that the government included in its sentencing memorandum.  Here, Carmona contends the untimeliness of the government's sentencing memorandum -- which was filed one day prior to Carmona's sentencing hearing -- and the District Court's subsequent denial of Carmona's motion to continue his sentencing hearing prevented Carmona from adequately refuting those statistics, such that the government's cited statistics were "never subject to any adversarial testing" and therefore unreliable.  But because Carmona made no developed argument about that alleged error in his opening brief, he waived it.  See Sparkle Hill v. Interstate Mat Corp., 788 F.3d 25, 29 (1st Cir. 2015) ("[W]e do not consider arguments for reversing a decision of a district court when the argument is not raised in a party's opening brief."); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

upwardly variant sentence for Carmona's §§ 922(g) and (o) convictions.

## B.

Having determined that the upwardly variant prison sentence that Carmona received for his most recent §§ 922(g) and (o) convictions was procedurally reasonable, we proceed to consider Carmona's challenge to the substantive reasonableness of that sentence. Carmona bases this challenge on his contention that the District Court "failed to give case-specific reasons for a variance of such magnitude and failed to adequately explain the chosen sentence." But, for the reasons we explained above, we do not agree.

The record makes clear that, in imposing an above-Guidelines sentence, the District Court relied on its belief that "longer sentences involving firearms have [a] deterrence effect" only in connection with Carmona's status as a second-time §§ 922(g) and (o) offender who had, in its opinion, "demonstrated a lack of remorse for his wrongdoing [and] a lack of respect for the law and th[e] Court." Based on this record, moreover, we conclude that Carmona's sixty-month prison sentence, "in light of the totality of the circumstances, resides within the expansive universe of reasonable sentences" he could have received for this offense. Rossignol, 780 F.3d at 477 (quoting King, 741 F.3d at

308).  As such, we find no abuse of discretion as to the District Court's imposition of the sixty-month sentence.[5]

## IV.

We come, finally, to Carmona's challenge to the substantive reasonableness of the District Court's imposition of an upwardly variant, statutory maximum two-year term of incarceration for his revocation of supervised release.  Here, too, we see no abuse of discretion.

Carmona challenges the substantive reasonableness of his revocation sentence on two grounds: first, that the District Court impermissibly and "inextricably intertwined the sentence" with the sentence for his new §§ 922(g) and (o) convictions; and second, that the sentencing errors that Carmona alleges the District Court committed in Carmona's new § 922 case "carried over and contaminated the revocation hearing."  It is not entirely clear to us that either of these grounds is properly deemed a substantive,

---

[5] Carmona also attacks the substantive reasonableness of his sentence to the extent that the District Court, in imposing the sentence, considered various other factors that we have enumerated above.  See supra note 2.  But "the weighing of those factors is largely within the [sentencing] court's informed discretion," and we are not persuaded that the District Court abused that discretion simply by weighing those factors differently than Carmona would have had it do.  United States v. Clogston, 662 F.3d 588, 593 (1st Cir. 2011) ("That the sentencing court chose not to attach to certain of the mitigating factors the significance that the appellant thinks they deserved does not make the sentence unreasonable.").

rather than a procedural, reasonableness challenge. But as we have noted before, "[t]he line between procedural and substantive sentencing issues is often blurred," United States v. Reyes-Santiago, 804 F.3d 453, 468 n.19 (1st Cir. 2015), and the flaws with each of Carmona's challenges are such that the challenges would fail regardless of how they are characterized.

As to the first challenge, Carmona points to the Guideline for revocation sentences, which instructs that "the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." U.S. Sent'g Guidelines Manual, ch. 7 pt. A, introductory cmt. (U.S. Sent'g Comm'n 2018). He argues that because "[t]here [were] no aggravating factors in this revocation" that could have justified the District Court's decision to vary upward six months from Carmona's Guidelines range of twelve to eighteen months' incarceration for the revocation, the District Court, in fact, erroneously sentenced him for the revocation of supervised release for his first §§ 922(g) and (o) convictions based on the facts of his new §§ 922(g) and (o) convictions.

We disagree. The conduct that grounded the revocation was the same type of conduct which had itself grounded the imposition of the term of supervised release that was being revoked. As a result, we conclude that the District Court's

imposition of an upwardly variant two-year prison sentence for a revocation precipitated by Carmona's recommission of the same offense was "roughly proportionate to [Carmona's] breach of trust." United States v. Daoust, 888 F.3d 571, 578 (1st Cir. 2018). Indeed, in pronouncing the sentence for the revocation, the District Court did note, seemingly referring to the new §§ 922(g) and (o) convictions, that "[t]his [was] Mr. Carmona's second indictment for the same charge[s], being a prohibited person . . . in possession of a machine gun, and ammunition, and magazines," and that "[a]ccordingly, it [was] the judgment of the Court" that the statutory maximum term of incarceration on revocation was appropriate.

As to Carmona's second challenge -- that the District Court's asserted errors in the prior sentencing proceeding "carried over and contaminated" Carmona's revocation sentencing -- we also disagree. As we explained above, Carmona's allegations of error as to the sentence he received for his new §§ 922(g) and (o) convictions are without merit. Thus, there was no abuse of discretion in the District Court's imposition of Carmona's revocation sentence on account of any errors in that prior proceeding.

## V.

For the foregoing reasons, the judgments of the District Court are **affirmed**.

- 33 -